Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Russell L. Taylor (SBN 345844)
rtaylor@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant,
CARBON HEALTH TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE ST. AUBIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARBON HEALTH TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:24-cv-00667-JST<br><br>**DEFENDANT CARBON HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: August 1, 2024<br>Time: 2:00pm<br>Courtroom: 6 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 1, 2024, at 2:00 pm, or as soon thereafter as the matter may be heard before the Honorable Jon S. Tigar in Courtroom 6 of the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Carbon Health Technologies, Inc. will and hereby does move this Court for an order dismissing Plaintiff's Class Action Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for three reasons:

- Plaintiff's first count for violation of the California Invasion of Privacy Act (Cal. Penal Code § 631 *et seq.*) ("CIPA") fails because Plaintiff cannot state a claim for aiding and abetting liability, as she has not alleged that Meta or Google violated any of this statute's provisions. In any case, Plaintiff also fails to sufficiently allege facts that Carbon Health possessed the requisite *intent* to have aided and abetted any alleged violation by Meta or Google.
- Plaintiff's second count, brought under the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56 *et seq.*) ("CMIA"), fails because Plaintiff has not alleged the disclosure of "medical information" as defined by the statute, nor does she allege that any such disclosure was actually viewed by an unauthorized person.
- Plaintiff's third count for Invasion of Privacy under the California Constitution fails because Plaintiff has not sufficiently alleged a protected privacy interest, a reasonable expectation of privacy, or a highly offensive breach of any alleged interest.

Dated: May 10, 2024

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ *Tammy B. Webb*
TAMMY B. WEBB
RUSSELL L. TAYLOR

Attorneys for Defendant,
CARBON HEALTH TECHNOLOGIES, INC.

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

RELEVANT FACTS ALLEGED IN THE COMPLAINT ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. Plaintiff's Claim under the CIPA Fails. ..... 4

A. Plaintiff Fails to State a Valid "Aiding and Abetting" Claim. ..... 4

1. Clause One Does Not Apply to Internet Communications. ..... 5

2. Clause Two Cannot Apply Because Plaintiff Does Not Allege the Interception of the Contents of a Communication While in Transit. ..... 6

3. Plaintiff Cannot Adequately Plead a Violation of Section 631(a) Clause Three by Meta or Google because Plaintiff Fails to Allege a Claim Under Clause One or Clause Two. ..... 9

4. Even if Plaintiff Could Plead a Predicate Violation of Clauses 1-3 by Meta or Google, She Has Not (and Cannot) Plead that Carbon Health had the Requisite Intent to Aid and Abet any such Violation. ..... 10

II. Plaintiff's CMIA Claim Should be Dismissed. ..... 11

A. The Information Plaintiff Alleges was Disclosed is not "Medical Information" as Defined by the CMIA and Binding Case Law. ..... 11

B. Plaintiff Fails to Allege That an Unauthorized Individual Viewed the Information. ..... 13

III. Plaintiff's Claim for Invasion of Privacy under the California Constitution Fails. ..... 15

A. Plaintiff Has Not Alleged a Specific, Protected Privacy Interest ..... 15

B. Plaintiff Had No Reasonable Expectation of Privacy in the Web Data at Issue ..... 15

C. Plaintiff Has Not Alleged a Sufficiently Serious or Highly Offensive Disclosure. ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 13

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV 23-2092-JGB (KKX), 2024 WL 878100 (C.D. Cal. 2024) ........ 13, 17

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. 2023) ........ 9, 14, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4, 13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 7

*Bunnell v. MPAA*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ........ 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 15

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 12

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ........ 6

*Eisenhower Med. Ctr. v. Super. Ct.*
226 Cal. App. 4th 430, 435 (2014) ........ 11

*Falkenberg v. Alere Home Monitoring, Inc.*,
No. 13-CV-00341-JST, 2014 WL 5020431 (N.D. Cal. 2014) ........ 14

*Falkenberg v. Alere Home Monitoring, Inc.*,
No. 13-CV-00341-JST, 2015 WL 800378 (N.D. Cal. 2015) ........ 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 6, 9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 7

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D Cal. 2014) ........ 3, 10, 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272, 287 (2009) .....16, 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) .....15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .....3

*People v. Laster*,
52 Cal. App. 4th 1450 (1997) .....10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....17

*People v. Malotte*,
46 Cal.2d 59, 64, 67 n.1 (1956) .....8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021).....5, 9

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. 2016).....5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .....12

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .....15

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249 (C.D. Cal. 2022) .....17

*People v. Perez*,
35 Cal.4th 1219 (2005) .....10

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .....2

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 ..... *passim*

*Swarts v. Home Depot, Inc.*,
No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. 2023).....5, 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
No. 22-CV-09042-JSC, 2023 WL 3707181 (N.D. Cal. 2023) .....6, 8

*Williams v. What If Holdings, LLC, et al.*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. 2022).....4, 5

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. 2021)....................................11, 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..........................................................................................7

**Statutes**

Cal. Civ. Code § 56.05(i)..........................................................................................11

Cal. Civ. Code §§ 56.10, 56.101..................................................................................11

Cal. Penal Code § 631(a) .......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8.............................................................................................................4

Fed. R. Evid. 201(b)(2)....................................................................................................2

## INTRODUCTION

Carbon Health Technologies, Inc. ("Carbon Health") is a management services organization and technology company that provides a variety of management, administrative, marketing, and software services to affiliated professional corporations, which enable those professional corporations to provide a variety of modern, technology-enhanced health care services for individuals, including urgent, primary, pediatric, and mental health care. Carbon Health began as a medical software platform and has since expanded to providing the management services and technology that allow its affiliated professional corporations to provide both telehealth and in-person services at its clinics, which includes twenty-two clinics in the greater Bay Area. Plaintiff Adrienne St. Aubin challenges Carbon Health's alleged use of common website advertising technologies, including the Meta Platforms, Inc. ("Meta" or "Facebook") Pixel and the Google Analytics tool (hereinafter referred to collectively as the "Website Technologies"), on the Carbon Health website. Plaintiff alleges that information related to her making appointments on Carbon Health's website was also sent to Meta or Google, which resulted in both entities targeting her with advertisements.

Plaintiff asserts three claims against Carbon Health, all of which are defective for the following reasons and should therefore be dismissed with prejudice:

- Plaintiff's first count for violation of the California Invasion of Privacy Act (Cal. Penal Code § 631 *et seq.*) ("CIPA") fails because Plaintiff cannot state a claim for aiding and abetting liability, as she has not alleged that Meta or Google violated any of this statute's provisions. In any case, Plaintiff also fails to sufficiently allege facts that Carbon Health possessed the requisite *intent* to have aided and abetted any alleged violation by Meta or Google.
- Plaintiff's second count, brought under the California Confidentiality of Medical Information Act (Cal. Civ. Code § 56 *et seq.*) ("CMIA"), fails because Plaintiff has not alleged the disclosure of "medical information" as defined by the statute, nor does she allege that any such disclosure was actually viewed by an unauthorized person.

- Plaintiff's third count for Invasion of Privacy under the California Constitution fails because Plaintiff has not sufficiently alleged a protected privacy interest, a reasonable expectation of privacy, or a highly offensive breach of any alleged interest.

**RELEVANT FACTS ALLEGED IN THE COMPLAINT**

Plaintiff alleges she used Carbon Health's website (https://carbonhealth.com/) on an unspecified number of occasions to schedule COVID-19 vaccination and urgent care appointments. Compl. at ¶ 7. Plaintiff alleges she has an active Facebook account, and that she routinely logged onto her Facebook account on the same browser she used to access Carbon Health's website. *Id.* at ¶ 8. According to Plaintiff, Meta and Google collect and maintain certain information about their users through information received from websites. *Id.* at ¶¶ 20–51. To do so, Plaintiff alleges Meta and Google utilize their respective Website Technologies, which "advertisers can integrate into their website, mobile applications, and servers, thereby enabling [Meta and Google] to intercept and collect user activity on those platforms." *Id.* at ¶ 24.

In essence, these Website Technologies are bits of software "code" that website owners can embed into their websites, which send anonymous information about users' HTTP (or HTTPS) requests and responses to the website owner. *Id.* at ¶¶ 20–51. This information is utilized by website owners to assess overall user interaction on their websites. *Id.* at ¶ 37. According to Plaintiff, after the website owner receives this information, the information is then "duplicate[d]" and transmitted to Meta and Google. *Id.* at ¶ 34. Thereafter, Meta and Google's private servers are able to take pieces of this information and correlate them to users' account profiles in order to serve targeted advertisements. *Id.* at ¶¶ 22, 23, 33, 43.

Notably, when a user creates an account with Meta or Google, they enter into an agreement with those entities with respect to the use of their personal data. *See* Meta, *Terms of Service*, https://www.facebook.com/legal/terms (last visited April 21, 2024); Google, *Privacy Policy*, https://. policies.google.com/privacy?hl=en-US (last visited April 21, 2024).[1] As Facebook's Terms of

[1] Carbon Health requests that the Court take judicial notice of: (1) Meta's Terms of Service; and (2) Google's Privacy Policy. The Court may take judicial notice of Meta and Google's public website under Fed. R. Evid. 201(b)(2). *See, e.g., Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204–05 (N.D. Cal. 2014). Pursuant to Rule 201(b)(2), the contents of Meta and Google's policies are "readily determined" by navigating to their respective websites and Plaintiff cannot "reasonably . . . question[]" the accuracy of these websites. Fed. R. Evid. 201(b)(2). Also, Plaintiff explicitly references

Service explain, Facebook "collect[s] and use[s] your personal data" pursuant to Facebook's "Privacy Policy," in order to provide all of Facebook's services. Meta, *Terms of Service*. Google's Privacy Policy provides a similar explanation with respect to the personal information that it collects. Google, *Privacy Policy*. Of course, users of both Facebook and Google may change their privacy choices about how these entities use their data at any time. *See* Meta, *Terms of Service*; Google, *Privacy Policy*. These policies also disclose that Meta and Google collect and receive information from third parties, such as Carbon Health. *See, e.g.*, Meta, *Terms of Service* ("We collect and receive information from . . . third parties about a variety of your information and activities on and off our Products."). Meta, moreover, has a filtering mechanism which explicitly prevents "potentially prohibited information," including "health . . . information," from being digested. *See Business Help Center: About Sensitive Health Information,* FACEBOOK, https://www.facebook.com/business/help/361948878201809?id=188852726110565 (last visited April 21, 2024).

Plaintiff alleges Carbon Health implemented these Website Technologies to "surreptitiously allow[ ] third parties, including Facebook and Google, to track, record, and intercept Plaintiff's and other online patients' confidential communications, personally identifiable information, and PHI." Compl. at ¶ 72. Specifically, Plaintiff alleges these disclosures included "information about the medical appointments Plaintiff St. Aubin scheduled on the Website —namely, appointments to obtain COVID-19 vaccinations and for urgent care, along with the location of the appointments." *Id.* at ¶ 7. Plaintiff further alleges that, as a result of these disclosures, "Plaintiff St. Aubin received digital advertisements related to the appointments she previously booked on Defendant's Website. For example, after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination." *Id.* Finally, Plaintiff alleges that website users are "able to '[s]earch symptoms and services' in the 'Book an Appointment' search bar," and she

various Meta and Google webpages describing how the Website Technologies operate in the Complaint. These webpages are thus incorporated by reference for this reason as well. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining that the incorporation-by-reference doctrine treats documents referred to "extensively" in a complaint "as though they are part of the complaint itself" so as to "prevent[] plaintiffs from selecting only portions of documents that support their claims[.]").

provides screenshots of searches by hypothetical users for "pap smear" and "cold and flu symptoms." *Id.* at ¶¶ 53–56. Plaintiff does not, however, allege that *she* ever typed information related to her alleged symptoms into the search bar, or that Meta or Google received any such information about her. Nor does Plaintiff allege that the relevant Website Technologies were present inside any patient portal on the Carbon Health website.

## LEGAL STANDARD

A complaint must allege "sufficient factual matter" to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I. Plaintiff's Claim under the CIPA Fails.

Plaintiff alleges that Carbon Health violated the CIPA by "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with third parties, including Facebook and Google, to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website." Compl. at ¶ 97; *see* Cal. Penal Code § 631(a). As discussed below, however, Plaintiff fails to state a claim for aiding and abetting liability under section 631(a).

#### A. Plaintiff Fails to State a Valid "Aiding and Abetting" Claim.

The California Supreme Court has interpreted section 631(a) of the CIPA as making unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If*

*Holdings, LLC, et al.*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. 2022) (quoting *Tavernetti v. Sup. Ct. of San Diego Cnty.*, 22 Cal.3d 187, 192 (1978)).

Section 631(a) also includes a fourth basis ("Clause Four" or "Fourth Clause") for liability, which extends to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)) (internal quotations removed). It is axiomatic that there can only be a violation under Clause Four if there is a violation of Clauses One, Two, or Three. *See id.* at 1137.

As noted, Plaintiff alleges that Carbon Health aided and abetted Meta and Google's purported violation of clauses 1-3 merely by installing the Website Technologies on its website. As such, Plaintiff's claim is contingent on a finding that Meta or Google violated one of these first three clauses. As discussed more fully below, Plaintiff's Complaint fails to allege facts sufficient to plausibly conclude that Meta or Google violated any of these clauses. In addition, Plaintiff's Complaint does not allege, nor support even the inference that Carbon Health had the requisite *intent* to aid and abet any alleged violation of the first three clauses by Meta or Google.

**1. Clause One Does Not Apply to Internet Communications.**

The first clause of section 631(a) provides that wiretapping is only prohibited when it is conducted by means of any "machine, instrument, or contrivance, or in any other manner." To the extent that Plaintiff alleges the Website Technologies constitutes any of these devices, the case law is directly inapposite.

As this Court has recognized, "by its plain terms, the statute prohibits unauthorized connection with transmissions related to 'telegraph or telephone' technologies." *Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453, at *5 (N.D. Cal. 2023). Nor is this Court alone, as other "[c]ourts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet"—as Plaintiff alleges here. *Id.* at *6; *see also Williams*, N2022 WL 17869275, at *2 (holding that "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal.

2016) (affirming interpretation of the first clause to solely telephonic communications); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) (reasoning that the first clause "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument"); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181, at *2 (N.D. Cal. 2023) (holding that "Plaintiff fails to state a claim under clause one because Section 631(a)'s plain text does not prohibit the non-telephonic conduct described here"). Plaintiff's claim under clause one fails for this reason.

**2. Clause Two Cannot Apply Because Plaintiff Does Not Allege the Interception of the Contents of a Communication While in Transit.**

To properly invoke clause two, Plaintiff must plausibly allege that Meta or Google acquired the "contents" of a "communication" while "in transit." Cal. Penal Code § 631(a). The allegations of the Complaint do not meet any one of these three requisite elements.

**a) Plaintiff's alleged website activity does not constitute "communication."**

Although "communication" is not defined by the CIPA itself, the California Legislature has "equated 'communication'" in the CIPA "with 'conversation'"—that is, the exchange of "one's thoughts, ideas, or knowledge." *People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000). Despite Plaintiff's inclusion of pages of background information about the Website Technologies and screenshots of data that allegedly *could be* transmitted to Meta by a hypothetical user, Plaintiff pleads no facts supporting that she "communicated" anything to the website. Relying only on a generalized reference to booking appointments, Plaintiff has not alleged that she engaged in any conduct reflecting her "thoughts, ideas, or knowledge" that were or could have been transmitted to Meta or Google. *Id.*

**b) The information allegedly disclosed was not "contents."**

The allegations in the Complaint appear to suggest that Meta and Google intercepted Plaintiff's browsing history on Carbon Health's public website through a Uniform Resource Locator

("URL"). Such URL information, however, does not constitute "contents" under CIPA as a matter of law.

Courts routinely find that clause 2 does not apply to URLs because a URL is not "contents" of a "communication." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Contents is distinguishable from "non-content" or "record information" about a communication, such as "extrinsic information used to route a communication," which is not actionable if collected. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."). Therefore, contents does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLs"—at least "when they are performing such a function." *In re Google*, 806 F.3d at 137; *see also In re Zynga*, 750 F.3d at 1106 ("Customer record information . . . includes the 'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer . . . [W]e conclude that 'contents' does not include such record information.").

Thus, the information Plaintiff alleges was intercepted by Meta and Google was "non-content" or "record information." *See In re Google*, 806 F.3d at 135. A URL does not convey the "meaning" of the communication with the host server—it simply identifies the location of the requested webpage on the Internet. In *Zynga*, for example, the Ninth Circuit explained that a URL could disclose that a person viewed the page of a specific support group, yet the court still held that such URLs "function[] like an address," not "contents" of a communication. 750 F.3d at 1107. The same is true here, as the URLs potentially disclosed to Meta and Google are simply "record information" which are "generated in the course of the communication." *Id.* at 1106–07. The fact that such URLs might disclose certain information about the location of the webpage on the Internet does not change this. The information allegedly disclosed to Meta and Google as a result of Plaintiff's alleged visits to the Carbon Health website is thus not "contents" for purposes of section 631(a).

**c) The alleged interception did not occur while the communications were in transit.**

Although inexplicably absent from the allegations related to her CIPA claim, Plaintiff suggests elsewhere that Meta and Google's alleged interception of information occurs "contemporaneously" with Plaintiff sending and receiving communications on Carbon Health's website. Compl. at ¶ 26; *see also id.* ("When a user accesses a website hosting the Facebook Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers . . . [T]wo sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's Website—Defendant's own code, and Facebook's embedded code.").

In *People v. Malotte*, the California Supreme Court interpreted the statutory text now contained in Penal Code § 631(a) and held that no wiretap had taken place despite a device having recorded each statement in a phone conversation immediately upon its arrival at a handset. 46 Cal.2d 59, 64, 67 n.1 (1956). The Court held that the interception requirement was not met by "obtaining . . . what is [ ] sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." *Id.* (internal quotations omitted); *see also Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007) (forwarding duplicate copies of communications, even within milliseconds, was not an interception in transit).

Plaintiff's allegations regarding contemporaneity are simply too conclusory to adequately state a claim. As this Court has held, "conclusory allegations" regarding contemporaneity "fail to support a claim under § 631(a)." *Swarts*, 2023 WL 5615453, at *8 (citing *Licea v. American Eagle Outfitters*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"). Thus, it does not suffice for Plaintiff to merely restate the statutory language. *See, e.g.*, *Valenzuela*, 2023 WL 3707181, at *5 (dismissing section 631 claim and holding that a bare statement that interception occurred "in real time" did "little more than restate the pleading requirement of real time interception . . . .").

Regardless, and despite Plaintiff's conclusory attempts to characterize this process as simultaneous through the use of words such as "contemporaneously," this is simply not how the Website Technologies operate. Instead, it is only *after* the response is received by the visitor's browser that the data is copied and separately transmitted to Meta—in a second transmission. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 ("[T]he comprehensiveness of Facebook's tracking does not establish that the Healthcare Defendants 'send' information to Facebook . . . More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens *independently*.") (emphasis added); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *5 (Cal. Super. Ct. 2023) (dismissing similar claim against healthcare provider because "the duplication and sending of Facebook's secret code happens *after* the request reaches its destination (John Muir's server)," and thus the "Plaintiffs have not alleged Defendant's 'interception' while 'in transit'") (emphasis added). Therefore, the alleged interceptions by Meta and Google do not occur while the communications are "in transit," as required by the statute. Any alleged copying and transmitting of such information to Meta and Google necessarily comes after this process is complete, which does not violate the CIPA.

**3. Plaintiff Cannot Adequately Plead a Violation of Section 631(a) Clause Three by Meta or Google because Plaintiff Fails to Allege a Claim Under Clause One or Clause Two.**

The third clause of section 631(a) restricts any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . ." Cal. Penal Code § 631(a). Because a violation of Clause Three is necessarily predicated on a violation of Clause One or Clause Two—which Plaintiff has not sufficiently alleged here—any claim for violation of Clause Three necessarily fails. *See, e.g.*, *Amsteel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law."); *In re Google*, 457 F. Supp. 3d at 827 ("Plaintiffs must establish that the information

at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").

**4. Even if Plaintiff Could Plead a Predicate Violation of Clauses 1-3 by Meta or Google, She Has Not (and Cannot) Plead that Carbon Health had the Requisite Intent to Aid and Abet any such Violation.**

As discussed, Plaintiff's aiding and abetting claim under clause four fails because she does not allege that Meta or Google violated any of the first three clauses. *Even if* this were not the case, however, Plaintiff's aiding and abetting claim would still fail because the Complaint fails to sufficiently allege that Carbon Health had the requisite *intent* to have aided and abetted any such violation.

"Proof of aiding and abetting . . . requires demonstrating the aider and abettor's *mens rea* – knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and the aider and abettor's [] *actus reus* – conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal.4th 1219, 1225 (2005); *see also People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997) (explaining that aiding and abetting is a "specific intent" crime).

Here, the Complaint says nothing with respect to Carbon Health's *mens rea*. Despite its fatalistic framing, the Complaint does little more than explain that the Website Technologies were offered to Carbon Health to help it analyze and track user interactions on its website. Compl. at ¶¶ 20–51. Plaintiff offers nothing in the way of allegations that Carbon Health would have been aware of, much less have intended to assist, any alleged violation of the CIPA by Meta or Google. In fact, as far as Carbon Health is concerned, any users of its website who were also Facebook or Google users either consented to those entities' data tracking and collection practices pursuant to their terms and policies when they signed up for their accounts, or opted out. *See supra* Relevant Facts; *see also* Meta, *Terms of Service*; Google, *Privacy Policy*. In other words, not only does Plaintiff fail to allege *mens rea*, its own allegations confirm that Carbon Health intended nothing other than what Plaintiff had already agreed to. Further, Plaintiff does not allege any facts suggesting that Carbon Health had any reason to question the efficacy of Meta's filtering mechanism, which purportedly prevents

"potentially prohibited information," including "health . . . information," from being digested. *See Business Help Center: About Sensitive Health Information,* FACEBOOK, https://www.facebook.com/business/help/361948878201809?id=188852726110565 (last visited April 21, 2024).

In sum, because Plaintiff fails to plead facts sufficient to establish Carbon Health's knowledge of Meta's or Google's unlawful intent, or any facts supporting Carbon Health's intent to assist Meta and Google in achieving any unlawful ends, the CIPA claim should be dismissed.

## II. Plaintiff's CMIA Claim Should be Dismissed.

To plead a claim under the CMIA, Plaintiff must allege that Carbon Health disclosed her "medical information," and that such information was viewed by an unauthorized person. *See* Cal. Civ. Code § 56 *et seq*. As discussed in more detail below, the Complaint does neither.

### A. The Information Plaintiff Alleges was Disclosed is not "Medical Information" as Defined by the CMIA and Binding Case Law.

California's CMIA applies only to "medical information." Cal. Civ. Code §§ 56.10, 56.101. Under the CMIA, "medical information" means "individually identifiable information . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." *Id.* § 56.05(i).

Relying on the statutory definition, the California Court of Appeals held in *Eisenhower Med. Ctr. v. Super. Ct.*, that "medical information" under the CMIA "cannot mean just any patient-related information held by a health care provider, but must be 'individually identifiable information' *and also* include 'a patient's medical history, mental or physical condition, or treatment.'" 226 Cal. App. 4th 430, 435 (2014). The Court further explained that a violation of the CMIA must involve "a release of substantive information regarding [a] person's medical condition, history, or treatment," and the fact that a person is a patient "is not in itself medical information" under the CMIA. *Id.* at 435–36; *see also Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. 2021) ("Plaintiff alleges the CMIA Defendants disclosed Plaintiff's name, cellular telephone number, 'treating physician names, medical treatment appointment information, and medical

treatment discharge dates and times' to rater8 . . . While some of this information is 'individually identifiable,' none of it constitutes 'medical information' within the meaning of the statute.");

Similarly, courts have uniformly held that the viewing of general health and symptom information, even if done on a medical provider's website, does not constitute "medical information." The court in *Smith v. Facebook, Inc.* expressly recognized this, holding that:

> The URLs at issue in this case point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase "intestine transplant," a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information. These pages contain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates to the past, present, or future physical or mental health or condition of an individual.

262 F. Supp. 3d at 954–55.

Here, Plaintiff does not plead disclosure of any "substantive" information concerning her medical history, conditions, or treatments. Instead, she merely alleges that "Facebook and Google, intercepted information about the medical appointments [she] scheduled on the Website—namely, appointments to obtain COVID-19 vaccinations and for urgent care, along with the location of the appointments." Compl. at ¶ 7. Such allegations fail for several reasons.

First, Plaintiff has only alleged that the Website Technologies were present on certain portions or pages of the *public* website of Carbon Health. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("*Smith* involved users browsing through websites providing healthcare information to the public at large, not users navigating to patient portals on healthcare providers' websites."). Critically, Plaintiff *does not* allege that the Website Technologies were present inside any patient portal on the Carbon Health website, which the relevant cases have held is decisive in making this determination. *See id.*; *see also, e.g.*, *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023) (denying motion to dismiss because plaintiff had sufficiently alleged that defendant incorporated the Meta Pixel into the "MyChart portal").

Second, the information allegedly disclosed to Meta and Google is not "medical information." Plaintiff alleges that Meta and Google received information about her "appointments to obtain COVID-19 vaccinations and for urgent care, along with the location of the appointments."

Compl. at ¶ 7. Such generalized appointment-related information, however, has consistently been recognized as not constituting "medical information." *See, e.g.*, *Wilson*, 2021 WL 4865930, at *5 (holding that no violation occurred where defendant disclosed "Plaintiff's name, cellular telephone number, treating physician names, *medical treatment appointment information*, and medical treatment discharge dates and times . . . .") (emphasis added).

Perhaps in recognition of this deficiency, Plaintiff also alleges that a website user is "able to '[s]earch symptoms and services' in the 'Book an Appointment' search bar." Compl. at ¶ 53. But Plaintiff fails to allege that *she* ever typed information related to symptoms into the search bar, or that Meta or Google received any such information about her. Instead, Plaintiff provides an example of searches that she claims *could* be conducted by a hypothetical user on Carbon Health's website. *Id.* at ¶¶ 53–56. As a matter of law, such hypothetical allegations are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Even if Plaintiff had actually conducted the hypothetical searches she references in the Complaint, any such inquiry typed in a public website's search bar is exactly the kind of non-actionable "general health information" contemplated by *Smith*, which is "accessible to the public at large." 262 F. Supp. 3d at 954–55; *see also, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, No. EDCV 23-2092-JGB (KKX), 2024 WL 878100 (C.D. Cal. 2024) (holding that no medical information was disclosed because "the Court can only interpret that Plaintiffs used Defendant's Website for routine medical searches and inquiries"). This result makes sense, from both a legal and practical perspective, as individuals may search for relevant health information on thousands of websites across the internet (WebMD, for example), yet it cannot realistically be contended that such websites operate in violation of the CMIA. As such, Plaintiffs cannot establish that "medical information" was disclosed—as required by the CMIA.

**B. Plaintiff Fails to Allege That an Unauthorized Individual Viewed the Information.**

*Even if* the information discussed *supra* could conceivably constitute "medical information," Plaintiff's CMIA claim also fails because she does not allege that the information was *actually viewed* by an unauthorized person—as she must to assert a CMIA claim.

Just last year, a California court addressed this same question in *Barbour*, 2023 WL 2618967. That case also involved the alleged installation of the Meta Pixel on a healthcare provider's public website and subsequent transmission of information to Facebook. *Id.* at *1. The court in *Barbour* explained that "possession of the physical form without actually viewing the information does not violate the Confidentiality Act." *Id.* at *7 (citing *Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546, 1557 (2014)). As such, the court found that no violation had occurred because "the information may be collected, analyzed, and used by [Meta] . . . all through the use of computers, without any human actually laying eyes on it." *Barbour*, 2023 WL 2618967, at *7

Here, Plaintiff does not actually allege that anyone "viewed" or "accessed" her data. While Plaintiff alleges that "a Facebook ID is an identifier sufficient to allow identification of an individual," she does not allege that this process involves anyone at Meta viewing or accessing such data. Compl. at ¶ 109. Plaintiff's hypothetical examples of searches on Carbon Health's website are also insufficient to do so. In fact, this very Court has previously dismissed CMIA claims based on insufficient allegations of third party viewing. *See Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-CV-00341-JST, 2014 WL 5020431, at *3 (N.D. Cal. 2014) (citing *Sutter Health*, 227 Cal. App. 4th at 1559).[2]

Further, Plaintiff's allegations about supposedly receiving targeted COVID-19 vaccination advertisements are also insufficient. *See* Compl. at ¶ 7 ("As a result of Defendant's unlawful conduct, Plaintiff St. Aubin received digital advertisements related to the appointments she previously booked on Defendant's Website. For example, after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination."). Plaintiff's conclusion requires making the unsupported (and improbable) inference that online advertisements for COVID-19 vaccination could *only* result from booking a vaccination appointment on Carbon Health's website. Plaintiff provides no factual support tying her appointment to the advertisement, nor does she address the issue of whether she searched for vaccination appointments

[2] While the *Falkenberg* plaintiffs' amended complaint revived their CMIA claim, this was only due to specific allegations that they suffered identity theft, that they had not previously suffered identity theft, and that the fraudulent accounts at issue had been opened using their social security numbers—information which is not generally available. *See Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-CV-00341-JST, 2015 WL 800378, at *3 (N.D. Cal. 2015).

more generally, including through a general Internet search (*e.g.*, Google) or through other healthcare provider's websites.

Ultimately, Plaintiff's allegations overlook the very process by which she alleges the Website Technologies operate. Information transmitted via the Website Technologies are received, processed, and utilized by Meta and Google through a series of complex programs and sets of code. While human individuals may develop these programs, they do not necessarily "view" the information that these programs receive and process. *See Barbour*, 2023 WL 2618967, at *7. As such, the CMIA claim necessarily fails.

## III. Plaintiff's Claim for Invasion of Privacy under the California Constitution Fails.

The elements of a constitutional invasion of privacy claim include the following: (1) a specific, protected privacy interest; (2) a reasonable expectation of privacy; and (3) a "sufficiently serious" invasion of a privacy interest such that it "constitute[s] an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 35–37, 39–40 (1994). As discussed below, Plaintiff cannot establish any of these requirements.

### A. Plaintiff Has Not Alleged a Specific, Protected Privacy Interest

At the outset, Plaintiff has not sufficiently alleged a specific, protected privacy interest. *Id.* Plaintiff's theory of this case is that her PHI was intercepted by, and disclosed to, Meta and Google. As discussed, however, the information which was allegedly disclosed to Meta and Google does not constitute PHI. *See* supra Section II(A); *see also Smith*, 262 F. Supp. 3d at 954–55. Therefore, it is unclear what privacy interest Plaintiff could realistically allege.

### B. Plaintiff Had No Reasonable Expectation of Privacy in the Web Data at Issue.

Plaintiff alleges that her and other Class Members had a reasonable expectation of privacy as to their alleged browsing on Carbon Health's website. Apart from her blanket assertion, however, Plaintiff provides little support, facts, or further contentions as to why this expectation of privacy is reasonable.

In any case, courts have consistently held that there is no reasonable expectation of privacy in many standard internet transmissions. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (Yahoo chat); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (Facebook

private messaging feature). Specific to the present matter, browsing data from public websites containing general information about a doctor, disease, appointment, or treatment, even when potentially connected to user information via the Website Technologies, is not PHI subject to HIPAA privacy requirements because such webpages: "[C]ontain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition of an individual.'" *Smith*, 262 F. Supp. 3d at 955 (quoting 45 C.F.R. § 160.103).

Similarly, Plaintiff here had no reasonable expectation of privacy in the activities which she alleges to have engaged in on Carbon Health's website. While Plaintiff does not even allege that she searched for symptom-related information on the website, even if she had the results of such a search for "general health information" would be no different than the information contained on thousands of other public websites—some of which Plaintiff likely viewed. It makes no difference that this general information was contained on the website of one of her alleged healthcare providers.

### C. Plaintiff Has Not Alleged a Sufficiently Serious or Highly Offensive Disclosure.

Plaintiff alleges in conclusory fashion that Carbon Health's "invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications," and also "constitutes an egregious breach of the societal norms underlying the privacy right." Compl. at ¶ 121.

When determining whether an invasion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). Here, the information that Plaintiff obtained on the public-facing website of Carbon Health, including information related to her alleged appointments, cannot reasonably be considered "highly offensive," nor does Plaintiff point to any illegitimate motives connected to the alleged disclosures.[3] As a matter of law, monitoring internet use for "legitimate

[3] As discussed *supra*, Carbon Health would have been justified in relying on the fact that any users of its website had consented to the data tracking and collection practices of Meta and Google when they signed up for their accounts. Further, Carbon Health would have no reason to question the efficacy of the filtering mechanisms employed by those entities.

business reasons," as opposed to "socially repugnant or unprotected reasons" like "harassment, blackmail, or prurient curiosity," is not highly offensive. *Id.* at 297–98. Further, many courts have held that using Internet "cookies" on—and sharing web browsing data from—publicly-accessible webpages is not highly offensive. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browsing history URLs and unique ID to third party was not highly offensive); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D Cal. 2014) (disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party was not highly offensive). In any case, "[b]ecause Plaintiffs fail to plead that any medical information was disclosed, Plaintiffs claims do not rise to the level of an 'egregious breach of the social norms' that is 'highly offensive.'" *B.K.*, 2024 WL 878100, at *7. Finally, Plaintiff may argue that the disclosure of a COVID-19 appointment is itself highly offensive, but courts that have considered this issue have rejected such conclusory allegations. *See, e.g.*, *Ojeda v. Kaiser Permanente Int'l, Inc.*, No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249, at *7 (C.D. Cal. 2022) (rejecting offensiveness argument about the disclosure of COVID-19 vaccination status because "Plaintiff has failed to allege sufficient facts to establish that the disclosure here was *highly offensive* . . . Without these details, the Complaint does not allege an *egregious* breach of social norms, and thus, insufficiently states a claim for invasion of privacy") (emphasis in original).

In sum, because the Complaint only alleges the sharing of information from publicly-accessible webpages that do not include any private or confidential medical information, and because there is no support for concluding that any information was shared for any "socially repugnant" reason like "harassment, blackmail, or prurient curiosity," Carbon Health's alleged sharing of data with Meta and Google is not highly offensive or an egregious breach of societal norms as a matter of law. *Hernandez,* 47 Cal. 4th at 287.

## **CONCLUSION**

For the foregoing reasons, Carbon Health respectfully asks the Court to dismiss the Complaint in its entirety, without leave to amend.

Dated: May 10, 2024

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Tammy B. Webb*
TAMMY B. WEBB
RUSSELL L. TAYLOR

Attorneys for Defendant,
CARBON HEALTH TECHNOLOGIES, INC.