**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com
idiaz@bursor.com

**BURSOR & FISHER, P.A.**
Phillip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

*[Additional counsel on signature block]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADRIENNE ST. AUBIN, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARBON HEALTH TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:24-cv-00667-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date: August 1, 2024<br>Time: 2:00 p.m.<br>Courtroom: 6<br>Judge: Hon. Jon S. Tigar |

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

ARGUMENT ..... 3

I. DEFENDANT IMPROPERLY REQUESTS THAT THE COURT TAKE JUDICIAL NOTICE AND OTHERWISE LOOK BEYOND THE FOUR CORNERS OF THE COMPLAINT ..... 3

II. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE CIPA ..... 4

A. Clause One of CIPA § 631(a) Applies to Internet Communications ..... 4

B. Plaintiff Alleges the Interception of the Contents of Plaintiff and Website Users' Communications with Defendant ..... 5

C. Facebook and Google Intercepted Plaintiff's Communications While in Transit ..... 7

D. Plaintiff Alleges a Violation of Clause Three of § 631(a), Independent of Clause One and Two ..... 8

E. Plaintiff Sufficiently Alleges Defendant Violated Clause Four of § 631(a). ..... 10

1. Clause Four applies to a broader swath of non-criminal conduct given the legislature's use of the terms "aids," "agrees with," and "employs" ..... 10

2. Defendant cannot avoid liability under Clause Four by claiming its patients consented to the third parties' data collection practices ..... 12

III. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE CMIA ..... 14

A. Plaintiff Plausibly Alleges Defendant Disclosed Medical Information ..... 14

B. Facebook and Google are Unauthorized Third Parties Who Viewed Plaintiff's Protected Health Information ..... 17

IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ..... 20

A. Plaintiff Plausibly Alleges a Specific Protected Privacy Interest ..... 20

B. Plaintiff Plausibly Alleges She Had a Reasonable Expectation of Privacy ..... 21

C. Plaintiff Plausibly Alleges Defendant's Invasion of Privacy Was Highly Offensive ..... 22

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) ..... 23

*Barbour v. John Muir Health,* 2023 WL 2618967 (Cal. Super. Jan. 5, 2023) ..... 8, 20

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 24

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 7

*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 5

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 13, 24

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 8, 9

*Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466 (2005) ..... 15, 16

*Cousin v. Sharp Healthcare,* 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ..... 2, 7, 18, 19

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 11, 12

*D'Angelo v. FCA US, LLC*, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ..... 9, 10

*Doe v. Beard*, 63 F. Supp. 3d 1159 (C.D. Cal. 2014) ..... 23

*Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ..... 1

*Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023) ..... 1, 18

*Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430 (2014) ..... 15, 16

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .......... 10

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .......... 4, 5

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 23

*Hill v. National Collegiate Athletic Ass'n.*,
7 Cal. 4th 1 (1994) .......... 23

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 6, 21, 22, 23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 13

*In re Google RTB Consumer Privacy Litigation*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 23, 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... passim

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) .......... 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 5

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 5

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 21, 25

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 8, 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 7, 8

*Rickwalder v. Meta Platforms, Inc.*,
2022 WL 22462351 (Cal.Super. Sep. 15, 2022) .......... 14

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) .......... 12

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 24

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (2017) .......... 8, 17

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 24

*Warren v. Pomona Valley. Hosp. Med. Ctr.*,
2023 WL 8439334 (Cal.Super. Nov. 14, 2023) .......... 19

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 23

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 16

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .......... 2

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 5

**STATUTES**

18 U.S.C. § 2511(3)(a) .......... 6

18 U.S.C. § 2702(a)(2) .......... 6

Cal. Civ. Code § 56.05(i) .......... 15

Cal. Civ. Code § 56.10 .......... 1, 15

Cal. Const., Article I, § 1 .......... 25

Cal. Penal Code § 631 .......... passim

**RULES**

Rule 201 of the Federal Rules of Evidence .......... 4

## INTRODUCTION

Plaintiffs Adrienne St. Aubin ("Plaintiff") filed this action against Defendant Carbon Health Technologies, Inc. ("Defendant" or "Carbon Health") for disclosing her private medical information to third parties without her consent in violation of California's privacy statutes and the right to privacy under the California Constitution. Defendant moves to dismiss each claim, largely arguing the false premise that Plaintiff failed to sufficiently allege the unlawful disclosure of her protected health information ("PHI"). On the contrary, Plaintiff makes specific allegations regarding: (1) the nature of her communications with Defendant—*i.e.*, about the type of medical treatment she sought; and (2) Defendant's disclosure of the PHI to third parties without consent, via tracking technology installed on its website. As discussed below, these allegations are sufficient to allege: (1) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (2) violations of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10, *et seq.*; and (3) invasion of privacy under California's Constitution.

Moreover, numerous Courts have denied motions to dismiss in cases involving the same, or similar technology. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *4 (N.D. Cal. Sept. 7, 2023) (denying motion to dismiss where plaintiffs alleged that hospital systems surreptitiously shared patient health information with Facebook); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *7 (N.D. Cal. Aug. 25, 2023); *In re Meta Pixel Healthcare Litig.* ("*Meta Pixel*"), 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *Cousin v. Sharp Healthcare* ("*Cousin II*"), 2023 WL 8007350, at *1 (S.D. Cal. Nov. 17, 2023). This Court should follow suit and deny Defendant's motion to dismiss in its entirety.

## STATEMENT OF FACTS

Defendant is a "modern health chain" that facilitates a variety of health care services for its patients, such as urgent care, primary care, and mental health care. Comp. ¶ 11. Defendant, among other ways, communicates with patients via carbonhealth.com (the "Website"), where patients can book appointments, access medical care, and manage their treatment or diagnosis of medical conditions. *Id.* In connection with the Website, Defendant embedded tracking code of third

parties, such as Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), and Google LLC ("Google"), that allowed the third parties to simultaneously and concurrently intercept patients' confidential Website communications with Defendant that contained personally identifiable information ("PII") and PHI. *Id.* ¶¶ 19-35 (describing Facebook's technology); 36-51 (describing Google's technology); 52-69 (describing technology on the Website).

Plaintiff's Complaint sets forth detailed allegations of the functionality of the third-party tracking technology. For instance, Facebook's tracking technology – referred to as the "Facebook Pixel" – is "piece of code" offered "to advertisers" that "tracks [ ] people and [the] type of actions they take." *Id.* ¶ 26. While embedded into the Website, the Facebook Pixel allowed Facebook to contemporaneously intercept patient communications, such as the type of medical treatment sought and the type of appointment booked. *Id.* ¶¶ 52-69 (describing technology on the Website); ¶¶ 19-35 (describing Facebook's technology); 36-51 (describing Google's technology); 52-69 (describing technology on the Website). Moreover, Plaintiff makes specific allegations regarding her communications with Defendant via the Website (*id.* ¶ 7), including booking appointments for COVID-19 vaccination and urgent care, and that Defendant aided and agreed with third parties, such as Facebook and Google, in intercepting those communications. *Id.* ¶¶ 22-35, 37-51, 97. After communicating with Defendant via the Website, Plaintiff received digital advertisements related to the appoints she booked with Defendant. *Id.* ¶ 7. For example, after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination. *Id.* Plaintiff and Class members never consented, agreed to, authorized, or otherwise permitted Defendant to disclose their PII or PHI to any of these entities. *Id.* ¶¶ 9, 97, 112.

Government regulators have affirmed that disclosure of patients' health information to advertising companies violates the law. In December 2022, the United States Department of Health and Human Services ("HHS") issued a bulletin highlighting covered entities' obligations under the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* ¶ 73. This bulletin reaffirmed that HIPAA prohibits unauthorized disclosures of health information collected from both authenticated (*i.e.*, patient portal) and unauthenticated (*i.e.*, public) websites' pages. *See id.* ¶¶ 73-75. Subsequently, HHS and the Federal Trade Commission ("FTC") issued a joint letter to

approximately 130 hospital systems and telehealth providers warning: "When consumers visit a hospital's website or seek telehealth services, they should not have to worry that their most private and sensitive health information may be disclosed to advertisers and other unnamed, hidden third parties." *Id.* ¶ 79.

**ARGUMENT**

## I. DEFENDANT IMPROPERLY REQUESTS THAT THE COURT TAKE JUDICIAL NOTICE AND OTHERWISE LOOK BEYOND THE FOUR CORNERS OF THE COMPLAINT

Tacitly recognizing that Plaintiff 's actual allegations sufficiently state the claims asserted against, Defendant requests that the Court look beyond the Complaint to Facebook's Terms of Service and Business Help Center[1] and Google's Privacy Policy. MTD at 2-3 and n.1. The Court should deny the request and strike Defendant's reference to, and reliance, on information outside the Complaint. In deciding a Rule 12(b)(6) motion, a court "generally looks only to the face of the complaint and documents attached thereto." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015). However, a court "can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence." *Id.* Under Rule 201, a court can judicially notice, *inter alia*, "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Fed. R. Evid. 201. A court may also consider documents incorporated by reference into the complaint. *Gerritsen*, 112 F.Supp.3d at 1020.

"As a general matter, courts are hesitant to take notice of information found on third party websites . . . ." *Id.* at 1028. Such information "is not capable of accurate and ready determination." *Id.* at 1029. Notably, even if a court can take judicial notice of information on a third-party website, it may not do so to indicate whether the contents of the information is true, but rather only to indicate what was in the public realm at the relevant time." *Id.*

[1] While Defendant asks the Court to take judicial notice of Facebook's Terms of Service and Google's Privacy Policy, it injects Facebook's Business Help Center into the case without any basis. *See* MTD at 3. The Court may summarily strike Defendant's improper reliance on the Business Help Center.

Here, Defendant seeks an end-around the judicial notice requirements by contending that Plaintiff references various Facebook and Google webpages in her Complaint. MTD at 3. Defendant then seems to contend that Plaintiff has, thus, incorporated the entirety of Facebook and Google's websites into her Complaint or, at minimum, all information to which the referenced webpages link. *See id.* Defendant's attempt to bootstrap into the Complaint information that is nowhere referenced therein, demonstrates Defendant's desperation to avoid Plaintiff's well-pled allegations.

## II. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE CIPA

CIPA § 631(a) provides for liability for any person who aids, agrees with or conspires with another person who commits a substantive violation of § 631(a) thereof. *See* Cal. Penal Code § 631(a). Specifically, § 631(a) establishes liability for:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, **[1]** intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, **[2]** or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; **[3]** or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; **[4]** or *who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .*

Cal. Penal Code § 631(a) (bracketed numbers and emphasis added).

### A. Clause One of CIPA § 631(a) Applies to Internet Communications

Defendant argues that Clause One of CIPA § 631(a) does not apply to internet communications. MTD at 5. Not so. "Courts have determined that § 631(a) applies to internet communications." *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, § 631(a) applies to internet communications."); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023); *Yoon v. Lululemon USA, Inc.*, 549 F.

Supp. 3d 1073, 1080 (C.D. Cal. 2021). While Defendant cites cases holding that Clause One does not apply to internet communications (MTD at 5-6), Plaintiff respectfully submits that the Court should look to those cases reaching the opposite conclusion.

### B. Plaintiff Alleges the Interception of the Contents of Plaintiff and Website Users' Communications with Defendant

Defendant contends the Complaint does not allege an underlying violation of Clause Two of CIPA § 631(a) because Plaintiff has not pled facts that show "she 'communicated' anything to the website" and because the information intercepted does not constitute "'contents' under CIPA as a matter of law." MTD at 6-7. The contention fails.

As to whether Plaintiff alleged the interception of her communications, *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020) is instructive. There, the court found that "full-string, detailed URLs" that included "'the particular document within a website that a person views'" will result in "URLs [that] could divulge a user's personal interests, queries, and habits" sufficient to constitute communications under the CIPA. *Id.* at 605. As in *Facebook Tracking*, Plaintiff sufficiently alleges that Facebook and Google intercepted her communications with Defendant, namely, she alleges that Facebook and Google intercepted and collected full-string, detailed URLs that disclosed the exact ***nature of the individualized treatment sought***. Comp. ¶¶ 7, 51, 56, 68, 70, 76, 100, 109, 110.

Defendant's reliance on *In re Zynga Privacy Litig*., 750 F.3d 1098 (9th Cir. 2014) (MTD at 7), for the proposition that the information Facebook and Google intercept are not "contents" under CIPA is misplaced. In *Zynga*, the Ninth Circuit held that under the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2511(3)(a) and 2702(a)(2), "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." 750 F.3d at 1106. According to Defendant, under *Zynga*, any URLs intercepted by Facebook or Google contained only record information, not communications. MTD at 7. Defendant is wrong.

As another court in this District recently held, a URL can contain the content of a communication where it includes information beyond basic identification and address information:

> The [Wiretap Act] broadly defines "content" to include "any information concerning the substance, purport, or meaning of [a] communication." "Contents" refers to the "intended message conveyed by the communication"—it does not include record information regarding the characteristics of the message that is generated in the course of the communication . . . . *And while a URL that includes "basic identification and address information" is not "content," a URL disclosing a "search term or similar communication made by the user" "could constitute a communication" under the statute.*

*Meta Pixel*, 647 F. Supp. 3d at 795 (internal citations omitted) (emphasis added). In *Meta Pixel,* the court distinguished *Zynga* appropriately, finding that "[u]nlike in *Zynga*, the URLs at issue here would not merely reveal the name of a Facebook user or group . . . ., the transmitted URLs include both the 'path' and the 'query string.'" *Id.; see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("In *Facebook Tracking*, the Ninth Circuit held these 'full-string detailed URL[s]' are distinct from the IP addresses discussed in *Zynga Privacy*.")

The recent decision in *Cousin II*, 2023 WL 8007350, is also instructive. There, the court held that full-string URLs that contained information "such as specialty healthcare providers and treatments for medical conditions" "plausibly conveyed content" – namely, website users' protected health information. *Id*. at *5. Accordingly, the court held that the URLs constituted the "contents" of a communication. *Id.* In reaching its holding, the court distinguished *Zynga,* noting that the URLs in that case did not contain any personal information. *Id*.

Here, as in *Cousin II*, Plaintiff alleges that third parties intercepted the contents of her communications with Defendant via the Website. The Complaint's allegations sufficiently show that Facebook and Google intercepted much more than "record information." For instance, paragraphs 54-57, and in particular Figures 3-6, provide examples showing that the transmitted URLs included private medical information revealing the ***nature*** of the appointment booked or the treatment being sought by a particular patient. *See* Comp. at Figures 3-6. As these examples show, the intercepted URLs included medical information – *i.e.*, content – as the URLs contained both the "path" and the "query string*.*" *Meta Pixel*, 647 F.Supp.3d at 795.

### C. Facebook and Google Intercepted Plaintiff's Communications While in Transit

Defendant argues that Plaintiff does not adequately allege that her communications were intercepted "in transit." MTD at 8-9. Defendant is wrong for three reasons.

First, Defendant "ignores the plain language of section 631." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). CIPA § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or* is being sent from, *or* received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). Thus, CIPA § 631 penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 38 Cal. 3d at 360 (emphasis added); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications"). Accordingly, even if Plaintiff's communications were not intercepted "in transit"—and they were—her communications were "sent from, or received at, a place within this state." *See* Comp. ¶¶ 6, 82.

Second, Defendant improperly disputes Plaintiff's allegations with factual findings from other cases. MTD at 9. The Court must assume the truth of the factual allegations in the Complaint on a motion to dismiss. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("Moreover, the complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case.")

The cases relied on by Defendant (MTD at 9) are distinguishable. Unlike here, one of the cases did not involve the Facebook Pixel. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (2017) (use of Facebook code to display buttons such as "Like" and "Share"). Moreover, unlike here, in *Barbour v. John Muir Health,* 2023 WL 2618967, at *1 (Cal. Super. Jan. 5, 2023), the plaintiff did not plead the contemporaneous transmission of the message at issue to Facebook's servers. Notably, in a subsequent opinion, the court in *Barbour* overruled the defendant's argument on these grounds, finding the allegation that the pixel simultaneously transmits the

plaintiff's communications sufficient to allege interception occurred in transit. Declaration of Brittany S. Scott ("Scott Decl."), Exhibit 1, *Barbour v. John Muir*, Minute Order, at 5, 6-7 (Cal. Super. May 18, 2023) ("*Barbour II*") (Finding the case law generally "supports the proposition that the simultaneous duplication and sending of a second copy of a message constitutes the interception of the original message for purposes of § 631(a).").

Third, Defendant mischaracterizes Plaintiff's allegations as "conclusory." The contention could not be further from the truth. In actuality, Plaintiff has alleged detailed facts showing that the Facebook Pixel intercepts user communications in transit:

> When a user accesses a website hosting the Facebook Pixel, *Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers*. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is *initiated by Facebook code and concurrent with the communications with the host website*. At relevant times, two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's Website—Defendant's own code, and Facebook's embedded code.

Comp. ¶ 26 (emphasis added); *see also id.* ¶ 34.

Contrary to Defendant's contention, the Complaint sufficiently alleges Plaintiff's communications were intercepted while "in transit" prior to reaching their final destination. No additional allegations are required. *See Campbell*, 77 F. Supp. 3d at 848 (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations").

### D. Plaintiff Alleges a Violation of Clause Three of § 631(a), Independent of Clause One and Two

Defendant argues that because Plaintiff has failed to allege any violation of Clause One or Two of CIPA § 631(a), she cannot allege a violation of Clause Three, which "is necessarily predicated on a violation of Clause One or Clause Two . . . ." MTD at 9. However, as discussed above, Plaintiff has adequately pled violations of Clauses One and Two and has therefore properly pled a violation of Clause Three of CIPA § 631(a).

In *D'Angelo v. FCA US, LLC*, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024), the court found that the plaintiff's allegations that the defendant, Salesforce, "'interpret[s], analyze[s], and also use[s] [the] intercepted conversations' for Salesforce's own 'business purposes,'[] and that Salesforce 'exploit[s] that information for financial gain,' []" sufficed for plaintiff to establish that Salesforce violated Clause Three because the allegations stated that Salesforce used the data for its own purpose and the reason why (monetary gain). *Id.* at *12; *see also Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *2 (S.D. Cal. Mar. 18, 2024) (finding allegations of the defendant profiting from chat data collected to identify anonymous individuals was sufficient to infer the defendant used the data for its own purposes).

As in *D'Angelo* and *Esparza*, Plaintiff sufficiently alleges a violation of Clause Three. The Complaint contains detailed allegations regarding Facebook's and Google's use of the communications they intercepted via Defendant's Website. For instance, Plaintiff alleges that after booking COVID-19 vaccination appointments via the Website, Plaintiff received advertising on Facebook related to COVID-19 vaccinations. Comp. ¶ 7. Those allegations show that Facebook used the contents of Plaintiff's communications with Defendant to target her with advertising. The targeting was possible because the information Facebook and Google obtained through their wiretaps allowed them to use data they intercept to provide targeted advertising. *Id.* ¶¶ 22-35, 37-51.

Plaintiff further alleges that Google used the intercepted communications for its own purposes, such as, *inter alia*, to "deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, [and] personalize content and ads you see on Google and on [] partners' sites and apps." *Id.* ¶ 42. Similarly, Plaintiff alleges that the Facebook Pixel enabled Facebook to not only help Defendant "with advertising to its own patients outside the Website, but also include individual patients among groups targeted by other Facebook advertisers relating to the conditions" that patients communicated to Defendant. *Id.* ¶ 31. This allegation shows that Facebook used communications intercepted from the Website to target advertising for other clients (to further its financial gain).

Because Plaintiff has alleged Facebook's and Google's violations of Clauses One and Two, and because Plaintiff has alleged that Facebook and Google used the information intercepted via the Website for their own purposes, Plaintiff has sufficiently alleged a Clause Three violation.

**E. Plaintiff Sufficiently Alleges Defendant Violated Clause Four of § 631(a).**

**1. Clause Four applies to a broader swath of non-criminal conduct given the legislature's use of the terms "aids," "agrees with," and "employs"**

Mischaracterizing Plaintiff's CIPA claim and ignoring the plain language of Clause Four of CIPA § 631(a), Defendant contends "Plaintiff's aiding and abetting claim . . . fail[s] because the Complaint fails to sufficiently allege that Carbon Health had the requisite intent to have aided and abetted any" violation of CIPA. MTD at 10. Defendant asserts its argument in an effort to have the Court apply a criminal intent standard to this civil case. *See id.* Notably, Plaintiff does not allege an "aiding and abetting claim," and Clause Four does not require "aiding and abetting." As such, Defendant's contention that Plaintiff has failed to adequately allege the "requisite intent" fails.

The word "abet" appears *nowhere* in CIPA § 631(a). Rather, CIPA § 631(a) solely uses the word "aids," as part of a list that also includes, *inter alia*, "agrees with" and "employs." Cal. Penal Code § 631(a). Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause. Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up).

Rather, the legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct, regardless of

"specific intent." *See Cousin*, 681 F. Supp. 3d at 1129-30. To that end, "aid" should be interpreted as "to give assistance,"[2] "agrees with" as "to concur in opinion or purpose,"[3] and "employs" as "to make use of" or "to hire."[4] In short, a defendant violates Clause Four where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by *enabling* NaviStone's wrongdoing.") (emphasis added).

Here, the Complaint is replete with allegations regarding Defendant's enabling of Facebook's and Google's wrongdoing and that Defendant intentionally engaged in that conduct. Comp. ¶¶ 9, 26-27, 46, 52-69, 97-98, 118. These allegations are sufficient to plead Defendant's violation of Clause Four of CIPA § 631(a). *See Cousin*, 681 F. Supp. 3d at 1129-30.

Significantly, Defendant provides no authority holding that civil remedies under the CIPA require proof of criminal "aiding and abetting." Instead, it relies on two criminal cases, *People v. Perez* and *People v. Laster* to establish the intent requirement. MTD at 10. But even if Plaintiff were required to allege "specific intent" – which she is not – she has done so. *Cf. Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (dismissing with leave to amend where, unlike here, the plaintiff failed to allege that the defendant knew how the third party used the intercepted data).

A person may be held liable as an aider and abettor where it: (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance to the other to so act; or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, when considered separately, constitutes a breach of the duty to the third person. *Id.* Here, at minimum, Plaintiff's allegations show that: (1) Defendant substantially assisted third parties, including Facebook and Google, in unlawfully intercepting Plaintiff's and class members' sensitive, confidential and protected health information; (2) Defendant breached its duty to Plaintiff and class members to safeguard their protected health information and keep it confidential; and (3) Defendant knew the way in which the third parties used the intercepted information, beyond

---

[2] *Aid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/aid.

[3] *Agree*, Black's Law Dictionary (11th ed. 2019).

[4] *Employ*, Black's Law Dictionary (11th ed. 2019).

merely storing it. Comp. ¶¶ 9-10, 26-27, 31, 33-35, 46-69, 97-98, 118. Indeed, the very purpose for embedding the tracking technology into the Website was to assist Facebook and Google with their advertising efforts. *Id.* ¶¶ 9, 26-31, 33-35, 46-69.

Improperly ignoring Plaintiff's allegations and the reasonable inferences therefrom, and improperly relying on information outside the Complaint, Defendant contends that Plaintiff fails to allege that Defendant "would have been aware of, much less have intended to assist, any alleged violation of the CIPA by [Facebook] or Google." MTD at 10. Defendant's contention is belied by Plaintiff's actual allegations and the reasonable inferences therefrom, as discussed above. Moreover, even if Defendant could rely on information outside the Complaint for the truth of the matter asserted, such as third-party privacy policies and terms of service, Defendant's contention requires the Court to improperly make inferences in Defendant's favor – namely, that Defendant actually read and was aware of those documents and the knew the information set forth therein to be true. *See id.* Defendant is not entitled to those inferences at this stage of the proceeding. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

**2. Defendant cannot avoid liability under Clause Four by claiming its patients consented to the third parties' data collection practices**

Again, improperly relying on information outside the Complaint, Defendant contends Plaintiff and class members somehow vicariously consented to Defendant's disclosure of their confidential and sensitive protected health information through their purported consent to third parties. MTD at 10. The contention lacks merit. Any notice meant to obtain consent must explicitly give users notice of the practice at issue. *Meta Pixel*, 647 F. Supp. 3d at 793 (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)). "The test is whether a reasonable user who viewed [the] disclosures would have understood that [the party providing the disclosure] was collecting the information at issue." *Meta Pixel*, 647 F. Supp. 3d at 793. Further, it is Defendant's burden, not Plaintiff's, to establish consent. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020).

First and foremost, should the court consider information outside the Complaint, it should also consider that Defendant has agreed to Facebook's Business Tools Terms, which required

Defendant warrant "not [to] share Business Tool Data with [Facebook] that [it] know[s] or reasonably should know . . . . includes health [] information . . . . (including ay information defined as sensitive under applicable laws . . . ." *Meta Business Tools Terms*, FACEBOOK, https://www.facebook.com/legal/businesstech?paipv=0&eav=AfaAkv3wzUQZyYccbyVUzaqJ2WThJtEX_2ngB2ZWb4uD8-loWGxjvt9yB16v9qob_ns&_rdr. Because of Defendant has agreed to Facebook's requirements, and because the exact requirements that Defendant must follow pursuant to its agreement are "susceptible to multiple meanings" Defendant cannot meet its burden to show that Plaintiff has consented to the disclosure or interception of her PHI. *Meta Pixel*, 647 F. Supp. 3d at 794; *See also Rickwalder v. Meta Platforms, Inc.*, 2022 WL 22462351 (Cal.Super. Sep. 15, 2022) (refusing to find consent via plaintiff's purported consent to Facebook's terms).

Analyzing a similar argument, the court in *Meta Pixel* held that users did ***not*** consent to Facebook's acquisition of health data because the generalized notice in Facebook's policies were not sufficient for users to consent to the collection and tracking of their ***health data***. *Id.* at 793-94. Specifically, the defendant, Facebook, noted that its policies "notify Facebook users that Facebook collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising." *Id.* at 793 (citing Facebook's Terms of Service at 4; Facebook's Data Policy at 4-5; Facebook's Cookies Policy at 4). The court rejected Facebook's argument that users consented to the collection of their medical information when accepting Facebook's policies because it noted that Facebook's policies were about general internet browsing while the data at issue in the case — Facebook's acquisition of health data — was about "a different matter entirely." *Id.* at 793-94.

The court's reasoning in *Meta Pixel* applies with more force here, given that Defendant does not allege any direct consent given by Plaintiff and class members to Defendant. In all events, because Facebook and Google's policies are about general data collection and tracking practices and are not specific to the collection and tracking of health data, Plaintiff and other Website users could not have consented to Facebook's and Google's acquisition of their health data or to Defendant disclosing or allowing the interception of that data. *See* Comp. ¶¶ 71, 112.

Defendant also argues that Plaintiff did not "allege any facts suggesting that Carbon Health had any reason to question the efficacy of Meta's filtering mechanism, which purportedly prevents 'potentially prohibited information,' including 'health . . . . information,' from being digested." MTD at 10-11 (citing *Business Help Center: About Sensitive Health Information*, FACEBOOK, https://www.facebook.com/business/help/361948878201809?id=188852726110565.) However, Facebook does not give its partners any guarantees that its filtering system ***will*** notify them of potentially prohibited information data that they shared. *Business Help Center: About Sensitive Health Information*, FACEBOOK, https://www.facebook.com/business/help/361948878201809?id=188852726110565. Instead, Facebook only says it ***may*** notify partners and further clarifies that its partners "are ultimately responsible for the data [they] share with Meta." *Id.* Therefore, Defendant cannot rely on Facebook's filtering system to absolve itself from aiding Facebook's interception of patients' PHI.

Because Plaintiff and Website users did not consent to Facebook's or Google's interception of their health data and did not consent to Defendant's disclosure of health data for marketing purposes, Defendant cannot avoid liability under Clause Four.

## III. PLAINTIFF STATES A CLAIM FOR VIOLATION OF THE CMIA

### A. Plaintiff Plausibly Alleges Defendant Disclosed Medical Information

Defendant argues that Plaintiff has failed to sufficiently plead it disclosed ***medical information*** because Plaintiff "merely alleges that 'Facebook and Google, intercepted information about the medical appointments [she] scheduled on the Website — namely, appointments to obtain COVID-19 vaccinations and for urgent care, along with the location of the appointments'" and that this information does not constitute medical information. MTD at 12-13. That is wrong.

The CMIA states that a "provider of health care … shall not disclose medical information regarding a patient of the provider of health care . . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Medical information' means ***any*** individually identifiable information, in electronic or physical form . . . . regarding a patient's ***medical history***, mental

health application information, ***mental or physical condition***, or ***treatment***." Cal. Civ. Code § 56.05(i) (emphasis added).

California courts have interpreted the CMIA to require disclosure of individually identifiable information that has a substantive medical treatment nexus. *See, e.g.*, *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*, 132 Cal. App. 4th 1466, 1472 (2005) (distinguishing between disclosing that a person is a patient of a particular healthcare facility and disclosing the nature of the patient's treatment); *cf. Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 434-36 (2014) (explaining that the compromised information amounted only to "individually identifiable information" because it did not show specific medical concerns or treatments). Thus, while the fact that a person was a patient at a particular facility may not communicate substantive information regarding a medical condition, treatment, or history, revealing the ***nature*** of the treatment, as is the case here, does. *Colleen M.*, 132 Cal. App. 4th at 1472.

Defendant's reliance on *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (MTD at 11) is misplaced. In *Wilson* the plaintiff alleged that the defendant disclosed his "medical treatment appointment information, and medical treatment discharge dates and times." *Id.* However, the plaintiff did not plead the specific treatment sought and received, instead merely describing his examination as treatment. *Id.* On those allegations, the court found that: (1) the plaintiff did not "allege facts that would allow the court to infer that he received medical treatment during the examination"; and (2) the information allegedly disclosed by the defendant was "insufficient to allege disclosure of medical information." *Id.*

Unlike *Wilson*, Plaintiff has pled facts revealing the specific ***nature*** of the treatment she sought and received, as opposed to conclusory statements that she merely booked an appointment with Carbon Health to obtain treatment. *See* Comp. ¶¶ 7, 70. Further, Plaintiff details that Defendant disclosed to Facebook and Google the "reason patients booked a medical appointment," not just the fact that a person booked an appointment. *Id.* ¶¶ 51, 56, 68, 76, 100, 109, 110. Plaintiff also provides images showing the data Defendant disclosed, including that the disclosed URLs contained "appointment-reason," along with the specific reason for the appointment. *Id.* ¶

56, Figure 6. Given that Plaintiff clearly alleged that Defendant disclosed "substantive information" related to Plaintiff's treatment, Plaintiff has pled sufficient facts to plausibly establish a violation of the CMIA. *See Eisenhower*, 226 Cal. App. 4th at 434-36.

Defendant also argues that Plaintiff did not sufficiently plead that the medical information Defendant disclosed constituted medical information given that "Plaintiff has only alleged that the Website Technologies were present on certain portions or pages of the public website of Carbon Health," as opposed to the patient portal. MTD at 12. Defendant further argues that the "hypothetical searches [Plaintiff] references in the Complaint" is the type of "non-actionable 'general health information'" discussed in *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), and therefore cannot establish Defendant disclosed medical information per the CMIA. *Id.* at 13. Both of these arguments lack merit.

In the *Meta Pixel* case, the court denied a motion to dismiss where the plaintiff alleged that when a website user clicked on the log-in button on the website, the Facebook Pixel obtained a URL showing the user logged into the patient portal. 647 F. Supp. 3d at 791. In reaching its holding, the court distinguished *Smith*, where the plaintiff made allegations of general health information, and found that because the URL at issue in *Meta Pixel* established that a user "is about to log in to a healthcare provider's website . . . . [the information] falls within the ambit of information protected." *Id.* at 793. By contrast, in *Smith*, the information disclosed involved URLs for pages users viewed on the website "containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information." 262 F. Supp. 3d at 954-55.

Here, the search bar function described in the Complaint is specifically designed for patients to book an appointment, not to obtain general health information via articles or blog posts. Comp. ¶ 53, Figures 1-2. Because the search function is specific to booking an appointment that will address the symptom a patient searches for or allow a patient to access a specific medical service, it reveals the ***substantive medical treatment*** or ***nature*** for which the patient is seeking to book an appointment. *Cf. Smith* 262 F. Supp. 3d at 954-55 (where the searches conducted led to

webpages with general information about a condition or information about a doctor). Notably, the URL disclosed by Defendant after a patient searches for a symptom or service on the "Book an Appointment" search bar includes the term "get care." Comp. Figure 4. This further shows that the search results that a patient receives when searching in the "Book an Appointment" search bar are not general health information, but an avenue to access medical care.

Further, the information disclosed by Defendant goes beyond merely revealing the symptoms or services for which a patient searches. It includes the reason why the patient booked their appointment. Comp. Figure 6. If a patient has moved beyond the search stage and has booked an appointment, this situation is analogous to the *Meta Pixel* scenario given that having an appointment shows patient status and a patient's medical treatments and care, whether or not the pixel was on the public-facing website or the patient portal. *See Meta Pixel* 647 F. Supp. 3d at 793.

Significantly, as alleged in the Complaint, the HHS has cautioned that disclosure of data like an "individual's medical record number . . . dates of appointments . . . or any unique identifying code" are considered individually identifiable health information (IIHI) or personal health information (PHI) because "when a regulated entity collects the individual's IIHI through its website . . . the information connects the individual to the regulated entity (*i.e.*, it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care." Comp. ¶¶ 77-78. The statements by HHS underscore that the information disclosed by Defendant constitutes medical information. *See id.*

In sum, Plaintiff provided sufficient information to plausibly allege that Defendant disclosed protected health information, including the ***nature*** of her Carbon Health appointments.

### B. Facebook and Google are Unauthorized Third Parties Who Viewed Plaintiff's Protected Health Information

Defendant argues that Plaintiff's claim fails because Plaintiff "does not allege that the information was *actually viewed* by an unauthorized person." MTD at 13 (emphasis in original). The argument fails.

Multiple courts have held that a health care provider's disclosure of PHI to third-party online advertisers is sufficient to plausibly plead viewing under the CMIA where the complaint includes allegations like the ones Plaintiff has made. *See Cousin II*, 2023 WL 8007350, at *4; *Regents*, 672 F. Supp. 3d at 819.

In *Regents*, the defendant argued that the plaintiff did not sufficiently allege that Facebook viewed the information sent to it by the defendant. The court held that the defendant's "challenge fails because [the] plaintiff [] alleged that Facebook acted upon the information transmitted to it by tailoring advertisements to her based on her medical condition" and that "this [was] sufficient to raise a plausible claim that her medical information was inappropriately accessed." *Regents*, 672 F. Supp. 3d at 819. The court further held that "[t]o require more would place the burden on her to describe UC Regents' technical systems without the benefit of discovery."

Similarly in *Cousin II*, the court rejected the defendant's argument that the plaintiffs failed to "allege their information was transmitted or viewed" given that the plaintiffs pled "their information was transmitted to Meta" and "[pled] information regarding Meta's business model and how it uses the information for targeted advertising." 2023 WL 8007350, at *4. The court deemed this information sufficient to establish the viewing or accessing requirement under the CMIA. *Id.* Further, the court reasoned that "[w]hether Meta, as an entity and not a human being, can 'view' information for CMIA purposes" and "whether the alleged use by Meta of the information, through perhaps algorithms, amounts to viewing or accessing under CMIA" were questions the court could not resolve at the MTD stage. *Id; see also Warren v. Pomona Valley. Hosp. Med. Ctr.*, 2023 WL 8439334, at *21 (Cal.Super. Nov. 14, 2023) (finding the allegation that Facebook "viewed, processed, and analyzed Plaintiffs' and Class Members' confidential Private Information" sufficient to allege CMIA violation); Scott Decl., Exhibit 2, *Bustos v. Riverside*, No. CVRI2203466, at 4 (Cal. Super Ct. Jan. 30, 2023) (holding allegations "that once information is intercepted and collected, Facebook 'processes it, analyzes it, and assimilates it into datasets like "Core Audiences" or "Custom Audiences" to allow targeted advertisement'" sufficient to state a CMIA claim).

Here, Plaintiff alleges that Facebook and Google plausibly viewed Plaintiff's PHI. Specifically, Plaintiff alleges that she saw advertising on Facebook "related to the appointments she previously booked on Defendant's Website. For example, after scheduling an appointment for her COVID-19 vaccine, Plaintiff received advertisements relating to COVID-19 vaccination." Comp. ¶ 7. This corroborates that Facebook not only viewed, but actually used and profited from, Plaintiff's health data disclosed by Defendant.

Plaintiff further describes how Facebook and Google utilize data they receive. For example, Plaintiff describes that "[a]fter collecting and intercepting the [health data], Facebook process it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences." *Id.* ¶ 35. Regarding Google, Plaintiff states that "[o]nce Google intercepts website communications, it [can] use" that data to "'personalize content ads [consumers] see on Google and on[] partners' sites and apps'" *Id.* ¶ 42. Plaintiff also alleges that "Google's range of software services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits. This involves collecting visitor information from thousands of websites and then analyzing that information [to] deliver targeted advertising and group web users so that they can be targeted for products and categories they are interested in." *Id.* ¶ 43. These allegations are more than sufficient plausibly allege Facebook and Google "viewed" Plaintiff's information.

In support of its argument that no unauthorized person actually viewed Plaintiff's or class member's PHI, Defendant cites *Barbour*. (MTD at 14). In *Barbour*, the court determined that there was no CMIA violation because Facebook may have been able to collect, analyze and use the data at issue "through the use of computers without any human actually laying eyes on it." *Barbour v. John Muir Health*, 2023 WL 2618967, at *7 (Cal.Super. Jan. 05, 2023). Plaintiff respectfully submits that the authority cited above where courts reached a contrary conclusion is better reasoned and should be followed by this Court.

Defendant also challenges the reasonable inference that Plaintiff's receipt of COVID-19 vaccination advertisements after scheduling her COVID-19 vaccination appointment shows that third parties viewed her disclosed health information. MTD at 14-15. Flipping the motion to

dismiss standards on their head, Defendant contends the inference is "unsupported (and improbable)" and then sets forth other possibilities that Defendant prefers. *Id.* At this stage, the alleged facts and the reasonable inferences therefrom must be viewed as true and in the light most favorable to Plaintiff. Properly viewed, Plaintiff's inference is reasonable and demonstrates that third parties viewed her disclosed information.

## IV. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Defendant argues that Plaintiff's invasion of privacy claim fails because (1) "Plaintiff has not sufficiently alleged a specific, protected privacy interest[,]" (2) Plaintiff "had no reasonable expectation of privacy in the activities which she alleges to have engaged in on Carbon Health's website[,]" and (3) "Carbon Health's alleged sharing of data with Facebook and Google is not highly offensive" or an egregious breach of societal norms as a matter of law[.]" MTD at 15-17. Not so.

To state a claim for invasion of privacy, Plaintiff must allege "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff has done so.

### A. Plaintiff Plausibly Alleges a Specific Protected Privacy Interest

"It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff properly pleads a specific legally protected privacy interest — namely, an interest in: "(1) precluding the dissemination and/or misuse of [her] sensitive, confidential communications and [PHI]; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff, Class, and Subclass Members' knowledge or consent." Comp. ¶ 117.

Defendant argues that Plaintiff has not sufficiently "alleged a specific, protected privacy interest" because the information Defendant disclosed to "Meta and Google does not constitute

PHI." MTD at 15. However, as previously discussed, the information Defendant disclosed to Facebook and Google amounts to PHI. *See, supra,* § III.A. Therefore, Plaintiff has alleged a specific privacy interest in her medical information.

### B. Plaintiff Plausibly Alleges She Had a Reasonable Expectation of Privacy

Because "patient-status and medical-related communications between patients and their medical providers are protected by federal law" and are "almost uniquely personal," "communications made in the context of a patient-medical provider relationship are readily distinguishable from" general online communications. *Meta Pixel,* 647 F. Supp. 3d at 800. Further, "[c]ase law supports [the] position that individuals maintain a reasonable expectation of privacy in detailed URLs." *Id.* (citing *Facebook Tracking*, 956 F.3d at 605–06) (finding plaintiffs adequately pled a reasonable expectation of privacy in "full-string detailed URLs). Here, Plaintiff had a reasonable expectation of privacy in her PHI that Defendant disclosed to third parties via detailed URLs containing contained the specific reasons for the appointments booked.

Additionally, Plaintiff has a reasonable expectation of privacy over her health data because she did not receive notice from Defendant regarding its practice of sharing patient's health data. Indeed, Defendant's Privacy Policy states that it "will not use [] [PHI] for any purpose that is not defined in [its] HIPAA Privacy Practices, including advertising or marketing purposes, without [patients'] consent." Comp. ¶ 112. Moreover, as discussed above, Facebook's and Google's privacy policies are not part of the case at this stage and, in all events, do not establish that Plaintiff and class members consented to Defendant's unlawful disclosures of their health data. *See, supra,* § II.E.2; *see also Meta Pixel*, 647 F. Supp. 3d at 800 (finding that the plaintiffs had a reasonable expectation of privacy "in their communications with their medical providers" and noting that the defendant's argument that the Facebook privacy policy detailing Facebook's data collection and tracking practices "support[ed], rather than diminish[ed], the likelihood that a user has an objectively reasonable expectation of privacy" over health data since the privacy policy did not "adequately disclose that Meta collects" health data).

Defendant argues that Plaintiff did not have a reasonable expectation of privacy in her medical information disclosed via the URLs because that "browsing data from public websites containing general information about a doctor, disease, appointment, or treatment, even when potentially connected to user information via the Website Technologies, is not PHI." MTD at 16. The argument lacks merit, as it once again mischaracterizes the data Defendant disclosed as general health information to which any person would have access. *See, supra*, § III.A.

Defendant further states that "there is no reasonable expectation of privacy in many standard internet transmissions." MTD at 15. However, the data at issue in this case does not constitute a standard internet transmission. Rather, the data is much more sensitive given that it contains detailed information regarding appointment scheduling and, therefore, involves "communications made in the context of a patient-medical provider relationship." *See Meta Pixel*, 647 F. Supp. 3d at 800. Given the medical nature of the data at issue, this case is "readily distinguishable from" cases assessing the reasonable expectation of privacy of general online communications. *Id.*

Plaintiff has adequately pled that she had an objectively reasonable expectation of privacy over the health data that Defendant disclosed to Facebook and Google.

### C. Plaintiff Plausibly Alleges Defendant's Invasion of Privacy Was Highly Offensive

Courts inform their assessment of an intrusion's offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*. Given the fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litigation*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing *Facebook Tracking*, 956 F.3d at 606; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading

stage about how offensive or serious the privacy intrusion is.") (citing *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (holding that whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury.")) Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Hill v. National Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 40 (1994).

Notably, district courts have "refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here," the case involved the disclosure of "medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'" *Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021); *see also Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014) (denying the defendant's motion to dismiss the plaintiff's invasion of privacy claim because "even negligent disclosure of HIV-positive status can be an egregious violation of social norms"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (denying the defendant's motion to dismiss the plaintiffs' invasion of privacy claim because the plaintiffs alleged that the defendant negligently disclosed their medical information).

Based on the above, whether Defendant's unlawful conduct was highly offensive is not a proper inquiry at this early stage. *See In re Google RTB Consumer Privacy Litigation*, 606 F. Supp. 3d at 946. Should the Court decide to engage in such an inquiry, Plaintiff has sufficiently pled that Defendant's invasion of Plaintiff's and class members' privacy was highly offensive given that it involved the disclosure of PHI. *See, supra*, § III.A.

Defendant's argument regarding the nature of the data at issue is nothing but a rehash of its failed arguments discussed above. *See, supra,* § III.A. When the true nature of the data at issue is considered, Defendant's disclosure thereof was highly offensive.

Beyond Defendant's erroneous characterization of the data as browsing data instead of health data, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement — even when they only involved browsing data. (*See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021)

(holding the interception of browsing data was highly offensive given that Google "set an expectation that it would not save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (finding the data collections to be highly offensive because Google's "representations regarding private browsing mode could have led users to assume that Google would not view their activity when in private browsing mode"); *Calhoun*, 526 F. Supp. 3d at 631 (finding Google's actions highly offensive because Google's "representations regarding Chrome's sync function could have led users to assume that Google would not receive the personal information at issue . . . while unsynced").

This case is analogous to *Rodriguez*, *Brown*, and *Calhoun*. As in those cases, Plaintiff received no adequate notice from Defendant, Google, or Facebook as to their practices of collecting ***health data***. Comp. ¶¶ 112, 119; *see also Meta Pixel*, 647 F. Supp. 3d at 793-94 (rejecting argument that Facebook's privacy policies constituted requisite consent). Worse yet, Defendant represented that it would not share medical information without consumers' consent, not even for marketing purposes. Comp. ¶ 71. Because Defendant's representations in its Privacy Policy were directly contradictory to its actual practice of using and disclosing medical information collected via appointment booking URLs for marketing purposes, Defendant's practice of allowing Facebook and Google to collect the medical data is highly offensive.

Relying on *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249 (C.D. Cal. Nov. 29, 2022), Defendant argues that because Plaintiff's appointment was for a COVID-19 vaccine, Defendant's data disclosure was not highly offensive. MTD at 17. Unlike here, the plaintiff in *Ojeda* failed to allege the necessary facts that would have allowed the court to determine whether the disclosure at issue was highly offensive. 2022 WL 18228249, at *1, 7. Moreover, the disclosure at issue in *Ojeda* was made by the plaintiff's employer to the plaintiff's colleagues and did not reveal communications with a health care provider. *Id.* at *1; s*ee Meta Pixel*, 647 F. Supp. 3d at 800 (stating that "patient-status and medical-related communications between patients and their medical providers are protected by federal law," are "almost uniquely personal," and "are readily distinguishable from" general online communications). As discussed throughout, here

Defendant disclosed communications with a health care provider to third-party advertisers, despite promising that Defendant would keep the information confidential.

Plaintiff has sufficiently pled that an invasion of privacy claim under Article I, § 1 of the California Constitution.

## CONCLUSION

Plaintiff has plausibly pled facts to establish that Defendant has disclosed, and has enabled Facebook and Google to intercept, private medical communications that amount to protected health information. Therefore, for the reasons fully discussed above, Plaintiff asks this Court to deny Defendant's motion to dismiss the Complaint. Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully requests that she be granted leave to file an amended complaint.

Dated: May 31, 2024

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Brittany S. Scott</u>*
Brittany S. Scott

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com
idiaz@bursor.com

**BURSOR & FISHER, P.A.**
Phillip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040

Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*