Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Russell L. Taylor (SBN 345844)
rtaylor@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant,
CARBON HEALTH TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE ST. AUBIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARBON HEALTH TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:24-cv-00667-JST<br><br>**DEFENDANT CARBON HEALTH'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: August 1, 2024<br>Time: 2:00pm<br>Courtroom: 6 |

**TABLE OF CONTENTS**

**Page**


I. The Court May Take Judicial Notice of the Requested Materials. ..... 1

II. Plaintiff's Claim Under the CIPA Fails. ..... 2

A. Clause One Does not Apply to Internet Communications. ..... 2

B. Clause Two Cannot Apply Because Plaintiff Does not Sufficiently Allege the Interception of the Contents of a Communication While in Transit. ..... 2

1. The information allegedly disclosed was not "contents." ..... 2

2. The alleged interception did not occur "in transit." ..... 4

C. Plaintiff Cannot Adequately Plead a Violation of Section 631(a) Clause Three because Plaintiff Fails to Allege a Claim Under Clause One or Clause Two. ..... 6

D. Even if Plaintiff Could Plead a Predicate Violation of Clauses 1–3 by Meta or Google, She Has Not (and Cannot) Sufficiently Plead that Carbon Health had the Requisite Intent to Aid and Abet any such Violation. ..... 7

III. Plaintiff's CMIA Claim Should be Dismissed. ..... 9

A. The Information Plaintiff Alleges was Disclosed is not "Medical Information." ..... 9

B. Plaintiff Fails to Allege the Unauthorized Viewing of the Information. ..... 11

IV. Plaintiff's Claim for Invasion of Privacy under the California Constitution Fails. ..... 13

A. Plaintiff Has Not Alleged a Specific, Protected Privacy Interest. ..... 13

B. Plaintiff Had No Reasonable Expectation of Privacy in the Web Data at Issue. ..... 13

C. Plaintiff Has Not Alleged a Sufficiently Serious or Highly Offensive Disclosure. ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 12

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV 23-2092-JGB (KKX), 2024 WL 878100 (C.D. Cal. 2024)....................10, 14

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. 2023)....................6, 11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2024)....................4, 14

*Bustos v. Riverside*,
No CVRI2203466 (Cal. Super. Jan. 30, 2023)....................12

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....................1, 14

*Cody v. Ring LLC*,
No. 23-CV-00562-AMO, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024)....................2, 5

*Coleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks*,
132 Cal. App. 4th 1446 (2005)....................10

*Cousin v. Sharp Healthcare*,
No. 22-CV-2040-MMA-DDL, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023)....................3, 4, 12

*D'Angelo v. FCA US, LLC*,
No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024)....................7

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. May 8, 2023)....................10, 12, 13

*Esparza v. Kohl's, Inc.*,
No. 23-cv-01988-AJB-KSC, 2024 WL 1152732 (S.D. Cal. Mar. 18, 2024)....................7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................3

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................2

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................3

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021) ....................8

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ....................5, 7

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ....................7

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................15

*Isaac v. Northbay Healthcare Corp.*,
No. FCS059353 (Cal. Super. Ct. Dec. 7, 2023) ....................6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................1

*People v. Laster*,
52 Cal. App. 4th 1450 (1997) ....................8

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................4, 9, 10

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249 (C.D. Cal. 2022) ....................15

*People v. Perez*,
35 Cal. 4th 1219 (2005) ....................8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................4

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. May 9, 2017) ....................6, 10, 11, 14

*Swarts v. Home Depot, Inc.*,
No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ....................2, 5

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) ....................7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................5

*Warren v. Pomona Valley. Hosp. Medical Center*,
No. 23STCV05324, 2023 WL 8439334 (Cal. Super. Nov. 14, 2023)..........................................11

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. 2021)............................................9, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..........................................................................................3, 4

**Statutes**

Cal. Penal Code § 631(a) ..................................................................................................2, 7

**Other Authorities**

*Business Help Center: About Sensitive Health Information*, FACEBOOK,
https://www.facebook.com/business/help/361948878201809?id=1888527261105
65..........................................................................................................................8

## INTRODUCTION

Plaintiff's Opposition (Dkt. 25) doubles down on the insufficient allegations of her Complaint (Dkt. 1). However, Plaintiff cannot sidestep the fact that the information allegedly disclosed to Meta and Google is not protected health information ("PHI"). This case is thus not about the disclosure of actual medical records or communications with doctors. Instead, this case arises out of Plaintiff's actions on Carbon Health's public website (not the patient portal) and the use of common web-based software services that help entities—like Carbon Health—understand and improve their digital platforms. Plaintiff accepted and did not opt out of Meta and Google's data collection policies. Plaintiff's attempt to expand existing privacy laws to recover a windfall of damages against Carbon Health should be rejected.

## ARGUMENT

### I. The Court May Take Judicial Notice of the Requested Materials.

Carbon Health's Motion (Dkt. 19) requested that the Court take judicial notice of Meta's Terms of Service, Google's Privacy Policy, and various other Meta and Google webpages that are cited extensively in Plaintiff's Complaint. Mot. at 2–3 n.1. Plaintiff's Opposition now falsely suggests that taking such judicial notice somehow impermissibly goes beyond the Complaint by supposedly incorporating "the entirety of Facebook and Google's websites into her Complaint or, at minimum, all information to which the referenced webpages link." Opp'n at 4.

Contrary to Plaintiff's somewhat confusing argument, the Complaint cites to (and expressly relies upon) webpages *within* Facebook's Terms of Service and Google's Privacy Policy. *See, e.g.*, Compl. at ¶ 42 n.32; *id.* at ¶ 60 n.39. Plaintiff cannot realistically contend these webpages are not, therefore, incorporated by reference and subject to application of judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (explaining that the incorporation-by-reference doctrine treats documents referred to "extensively" in a complaint "as though they are part of the complaint itself" so as to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *see also, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) ("Plaintiffs request that the Court take judicial notice of three publicly available Google webpages.

Google requests that the Court take judicial notice of four versions of Google's Privacy Policy. These documents appear on publicly available websites and are thus proper subjects for judicial notice."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813–14 (N.D. Cal. 2020) (taking judicial notice of Google's Terms of Service, Privacy Policy, and a Google blog post).

Facebook's Business Help Center, which Plaintiff similarly contends Defendant "inject[ed] . . . into the case without any basis," Opp'n at 3 n.1, is also repeatedly cited to and relied upon. *See, e.g.*, Compl. at ¶ 22 n.10, 11; ¶ 23 n.14, 16, and 17; ¶ 28 n.23; ¶ 32 n.25; ¶ 33 n.26, 27.

Accordingly, the Court should take judicial notice of Meta's Terms of Service, Google's Privacy Policy, and the other Meta and Google webpages incorporated into the Complaint.

## II. Plaintiff's Claim Under the CIPA Fails.

As explained in Carbon Health's Motion, Plaintiff has failed to sufficiently allege that Meta or Google violated any of the first three clauses of section 631(a), and therefore cannot prevail on her claim for aiding and abetting liability. Mot. at 4–11. In fact, Plaintiff's Opposition confirms that the Complaint's deficiencies are not curable, and that the CIPA claim should be dismissed.

### A. Clause One Does not Apply to Internet Communications.

Plaintiff argues that "[c]ourts have determined that § 631(a) applies to internet communications." Opp'n at 3–4. This very Court has already rejected such a notion, recognizing instead that "[c]ourts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet." *Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453, at *6 (N.D. Cal. Aug. 30, 2023); *see also, e.g.*, *Cody v. Ring LLC*, No. 23-CV-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) ("Clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet . . . ."). Plaintiff has not provided this Court with any valid reason to stray from this reading of clause one.

### B. Clause Two Cannot Apply Because Plaintiff Does not Sufficiently Allege the Interception of the Contents of a Communication While in Transit.

#### 1. The information allegedly disclosed was not "contents."

As explained in Carbon Health's Motion, the Complaint merely alleges that Meta and Google intercepted Plaintiff's browsing history on Carbon Health's public website through a Uniform

Resource Locator ("URL"). Mot. at 6–7. Importantly, such URL information is not "contents" under the CIPA as a matter of law. *Id.*

Plaintiff now argues that her allegations are sufficient because she contends "that Facebook and Google intercepted and collected full-string, detailed URLs that disclosed the exact ***nature of the individualized treatment sought***." Opp'n at 5 (emphasis in original). Contrary to Plaintiff's argument, courts regularly find that clause 2 does **not** apply to URLs because a URL is not "contents" of a "communication." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). This is because a URL does not convey the "meaning" of the communication with the host server—it simply identifies the location of the requested webpage on the Internet. While Plaintiff repeatedly states in conclusory fashion that Carbon Health discloses PHI to Meta and Google, a close read of the Complaint reveals that Plaintiff merely restates how *hypothetical* users may have used the website—*i.e.*, searching unspecified health conditions, identifying potential appointments—and not what substantive contents of Plaintiff's (or for that matter even of hypothetical users') actual communications were allegedly intercepted. *See, e.g.*, Compl. at 52–72. At best, the information allegedly disclosed is the "extrinsic information used to route a communication" that courts have repeatedly concluded does not constitute "contents." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015).

Plaintiff suggests that *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020) is instructive. Opp'n at 5. But Plaintiff's citations to *Facebook Tracking* are inapplicable to her CIPA claim, as the authority upon which she relies concerned the court's discussion of the reasonable expectation of privacy as it pertained to claims for invasion of privacy, **not** a claim under CIPA. *See id.* at 601–06; *see also Cousin v. Sharp Healthcare* ("*Cousin II*"), No. 22-CV-2040-MMA-DDL, 2023 WL 8007350, at *5 (S.D. Cal. Nov. 17, 2023) ("[I]n *In re Facebook*, the Ninth Circuit . . . did not consider whether such information amounted to 'content' for the purpose of CIPA or the federal Wiretap Act."). The analysis of such claims is distinct from that under CIPA.

Plaintiff also argues that Carbon Health's reliance on *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) is somehow misplaced. Opp'n at 5. In so arguing, however, Plaintiff relies on

several easily distinguishable cases. For example, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022), involved the presence of an active Facebook Pixel *inside* patient portals. Opp'n at 6. By contrast, Plaintiff here does not allege that any of the Website Technologies at issue existed inside Carbon Health's patient portal.

Plaintiff reliance on *Cousin II*, 2023 WL 8007350, at *6, is equally misplaced. Plaintiff's contention that (like the Plaintiff in *Cousin II*) she has "provide[d] examples showing that the transmitted URLs included private medical information revealing the nature of the appointment booked or the treatment being sought by a particular patient" misses the point. Opp'n at 6; *see also id.* (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. Aug. 7, 2024)). A URL does not convey the "meaning" of the communication with the host server. As the Ninth Circuit recognized in *Zynga*, even where a URL could disclose that a person viewed the page of a specific support group, such URLs still "function[] like an address," not "contents" of a communication. 750 F.3d at 1107. The same is true of Plaintiff's allegations.

**2. The alleged interception did not occur "in transit."**

Clause two requires that the alleged interception occur while "in transit." Mot. at 8–9. Here, Plaintiff's conclusory allegations regarding contemporaneity are insufficient to properly state a claim and, in any case, completely ignored how the Website Technologies at issue operate.

Plaintiff's first argument reads out a key word in the relevant clause: the word "while." Plaintiff suggests that even if the interception did not occur while "in transit," her alleged communications were still "sent from, or received at, a place within the state." Opp'n at 7 (quoting Cal. Penal Code § 631) (imposing liability for intercepting a communication "[w]hile it is in transit . . . or is being sent from, or received at any place within the state"). But by removing the word "while" from the "sent from, or received at" language, Plaintiff disregards the key temporal requirement of the clause. Plaintiff's reading of section 631, including her overbroad reading of the California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), has been rejected by various California courts:

> Cody fails to acknowledge that the key word "while" applies to the entire clause. Cal. Penal Code § 631(a)). Cody argues that the Supreme Court in *Ribas* interprets the phrase disjunctively. However, the *Ribas* Court explained that there

> may be a prima facie violation of Section 631 where a defendant eavesdrops on a conversation "while the communication was either 'in transit' or was 'being sent from' and 'received at' a place within this state." This interpretation leaves the contemporaneous requirement intact. Thus, Cody fails to allege sufficient facts showing that Kustomer intercepted messages in real time.

*Cody*, 2024 WL 735667, at *5 (internal citations omitted); *see also, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) ("The statute applies to messages intercepted 'while the same . . . is being sent from, or received at any place within this state.' 'While' implies the interception must occur contemporaneous with the sending or receipt of the message. Thus, Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California."). Thus, it is not enough (as Plaintiff appears to contend) that the intercepted contents were "sent from, or received at, a place within the state."

Plaintiff also argues that she has sufficiently pled the "in transit" requirement because this Court "must assume the truth of the factual allegations in the Complaint on a motion to dismiss." Opp'n at 7. While it is true that a court must take *well-pleaded* factual allegations as true, a court is not required to take as true labels, conclusions, and mere assertions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's allegations as to contemporaneity remain too conclusory to adequately state a claim, as Plaintiff simply restates the required statutory language. *Swarts*, 2023 WL 5615453, at *5 ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"); *Cody*, 2024 WL 735667, at *5 ("Cody's conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations."). Plaintiff's suggestion that her allegation that "communications were intercepted while 'in transit' prior to reaching their final destination" is alone enough to state a claim is simply wrong. Opp'n at 8. As explained in Carbon Health's Motion, including pages of background information about the Website Technologies does not, by itself, support Plaintiff's conclusory allegations concerning contemporaneity. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) ("Plaintiff has alleged, in general terms, how the interception occurs . . . However, Plaintiff has not added any additional factual details to make clear when the interception occurred. Merely parroting the statutory requirement that it occurred in transit is insufficient.").

Finally, Plaintiff's attempt to distinguish the cases relied upon by Carbon Health fall flat. Plaintiff first asserts that *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. May 9, 2017) is distinguishable because it did not involve the Meta Pixel. But this ignores that the technology at issue in that case (Facebook's "Like" and "Share" buttons) operated in an almost identical fashion to the Pixel. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 948 ("To display a Facebook button, a website owner embeds a code snippet that Facebook provides. When someone visits a page where a Facebook button is embedded, the visitor's browser makes two GET requests."). Plaintiff essentially makes a distinction without a difference. In fact, a careful review of the *Smith* court's analysis confirms that clause two's "in transit" requirement is not met here. *See id.* at 951 ("The website's decision to embed the code allows that connection to occur, but the connection happens independently.").

Plaintiff's attempt to distinguish *Barbour* also fails. Plaintiff contends that, "in a subsequent opinion, the court . . . overruled the defendant's argument . . . finding the allegation that the pixel simultaneously transmits the plaintiff's communications sufficient to allege interception occurred in transit." Opp'n at 7–8. But the plaintiff in *Barbour* was only able to rescue their CIPA claim as a result of specific, detailed allegations that directly responded to the deficiencies identified in the court's prior dismissal—allegations that were much more specific than presently alleged by Plaintiff. More importantly, even if Plaintiff had more detailed allegations, the second *Barbour* decision was incorrectly decided, as other California courts have recognized it is only *after* a response is received by the visitor's browser that the data is copied and separately transmitted to Meta and Google—as part of a second, not contemporaneous, transmission. *See, e.g.*, *Isaac v. Northbay Healthcare Corp.*, No. FCS059353 (Cal. Super. Ct. Dec. 7, 2023) (dismissing CIPA claim as the allegations failed to allege "simultaneous transmission[s] from the user's computer to both [defendant hospital] and Facebook of information transmitted by the user to [the defendant hospital]").

**C. Plaintiff Cannot Adequately Plead a Violation of Section 631(a) Clause Three because Plaintiff Fails to Allege a Claim Under Clause One or Clause Two.**

As previously argued, because a violation of the third clause is predicated on a violation of clause one or two, Plaintiff's claim for a violation of clause three necessarily fails. *See* Mot. at 9–10. For the reasons set forth above, Plaintiff's Opposition offers nothing to change this conclusion.

Plaintiff now argues, however, that she has plead a violation of clause three "independent" of clauses one and two. *Id.* at 8–10. First, "independent" is perhaps not the correct terminology, however, as the clause at issue prohibits "attempting to use or communicate information obtained *as a result of engaging in either of the previous two activities*." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978 (emphasis added). Thus, in all instances a violation of clause three *must* be predicated on a violation of clauses one or two. Second, the cases upon which Plaintiff relies to support her "independent" basis for liability actually assess the "use" requirement under the statute, which is only relevant upon first finding a violation of clauses one or two. *See, e.g.*, *D'Angelo v. FCA US, LLC*, No. 3:23-cv-00982-WQH-MMP, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024); *Esparza v. Kohl's, Inc.*, No. 23-cv-01988-AJB-KSC, 2024 WL 1152732 (S.D. Cal. Mar. 18, 2024). In sum, because Plaintiff has not sufficiently plead claims under clauses one or two, Plaintiff's claim for a violation of clause three necessarily fails.

**D. Even if Plaintiff Could Plead a Predicate Violation of Clauses 1–3 by Meta or Google, She Has Not (and Cannot) Sufficiently Plead that Carbon Health had the Requisite Intent to Aid and Abet any such Violation.**

Carbon Health's Motion explained that *even if* Plaintiff could establish that Meta or Google violated any of the first three clauses, Plaintiff's claim under clause four would still fail because Plaintiff has not sufficiently alleged that Carbon Health had the requisite *intent* to have aided and abetted any such violation.

Plaintiff's Opposition argues "[t]he word 'abet' appears nowhere in CIPA § 631(a). Rather, CIPA § 631(a) solely uses the word 'aids' . . . ." Opp'n at 10. Plaintiff therefore contends that CIPA does not require "proof of criminal 'aiding and abetting.'" *Id.* Plaintiff's argument, however, ignores authority applying an aiding and abetting requirement to CIPA claims under clause four. *See, e.g.*, *Heiting*, 2023 WL 9319049, at *6 ("[T]he Complaint alleges that Defendant paid Genesys to intercept messages, it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent to *aid and abet* Genesys's purported CIPA violation.") (emphasis added); *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 1626114, at *4 (C.D. Cal. Apr. 2, 2024) ("Section 631(a) also provides for liability for third party violations of the statute by

containing an *aiding and abetting* provision . . . .") (emphasis added); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021) (describing standard as aiding and abetting).

Plaintiff's suggestion that Carbon Health's argument solely depends on two inapplicable criminal cases is wrong. While it may be true that the two cited cases were criminal cases (which is unsurprising given that CIPA is a criminal statute), Carbon Health cited those two cases because they best explain the requisite *mens rea* for aiding and abetting under the statute. *See, e.g.*, *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005); *see also People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). However, the non-criminal cases cited above confirm that the standard applies in the civil context.

Plaintiff also argues her allegations are sufficient because "the Complaint is replete with allegations regarding Defendant's enabling of Facebook's and Google's wrongdoing and that Defendant intentionally engaged in that conduct." Opp'n at 11. Despite her sweeping assertion, Plaintiff does not offer any allegations that Carbon Health was or would have been aware of, much less have intended to aid or assist, any alleged violation of the CIPA by Meta or Google. At most, Plaintiff asserts the Complaint establishes that "the very purpose for embedding the tracking technology into the Website was to assist Facebook and Google with their advertising efforts." Opp'n at 12. Such an allegation (even if expressly made) is insufficient. Plaintiff expressly alleges that the Website Technologies are offered to websites (including Carbon Health) to assist them with evaluating user interactions within their own websites. *See, e.g.*, Compl. at ¶ 38 ("Google advertises this service can '[m]onitor activity on your site as it happens.'"). While Meta and Google may also receive information related to those interactions, it strains credulity (and renders the claim implausible) to suggest that websites (such as Carbon Health) install the Website Technologies with the purpose of assisting Facebook and Google—as opposed to installing them for their own interests. Even if this was Carbon Health's intent, however, Plaintiff has not also alleged—as she must—that Carbon Health was aware of the alleged illegality of such activity by Meta and Google. Simply put, Carbon Health had no reason to question the efficacy of the Website Technologies' filtering mechanisms, *see Business Help Center: About Sensitive Health Information*, FACEBOOK, https://www.facebook.com/business/help/361948878201809?id=188852726110565 (last visited April 21, 2024), and nothing in the Complaint suggests it did. While Plaintiff argues Carbon Health

cannot rely on "information outside the complaint," undisputed information about the filtering mechanism(s) are the proper subject of judicial notice. Opp'n at 12; *see also Supra* Section (I).

Finally, Plaintiff contends she and other class members could not have consented to Facebook and Google's data tracking and collection practices. Opp'n at 12–14. According to Plaintiff, even if Plaintiff agreed to Meta's Terms of Service and/or Google's Privacy Policy, which disclose these entities' tracking practices, those agreements do not allow for the tracking of PHI—and Carbon Health is expressly prohibited from sharing such information. *Id.* While the premise of Plaintiff's argument may be correct, that Carbon Health is prohibited from sharing PHI, the flaw is the fact that, as discussed *infra*, her PHI has not been tracked or shared. Plaintiff's Complaint does not plausibly establish that Meta, Google, or Carbon Health engaged in an activity to which she did not already consent. As above, Plaintiff's reliance on *In re Meta Pixel Healthcare Litig.* is misplaced because that case involved the presence of an active Facebook Pixel inside *patient portals*—which undeniably implicated PHI. 647 F. Supp. 3d at 784. Such is not the case here.

**III. Plaintiff's CMIA Claim Should be Dismissed.**

As set forth in Carbon Health's Motion, Plaintiff has not sufficiently alleged that Carbon Health disclosed her "medical information," or that any such information was actually viewed by an unauthorized person. Mot. at 11–15. Plaintiff's Opposition does not cure these deficiencies.

**A. The Information Plaintiff Alleges was Disclosed is not "Medical Information."**

The information allegedly disclosed to Facebook and Google did not include "substantive" information concerning her medical history, conditions, or treatments. *Id.* at 12–13. As previously noted in Carbon Health's Motion, generalized appointment-related information does not constitute "medical information." *See, e.g.*, *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. 2021) (holding that no violation occurred where defendant disclosed "Plaintiff's name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times . . . .").

Plaintiff now argues (without support) that the information at issue here involves substantive medical treatment, including the nature of the treatment sought. Opp'n at 14–17. According to Plaintiff, because the website's "search function is specific to booking an appointment that will

address the symptom a patient searches for or allow a patient to access a specific medical service" the appointment itself necessarily reveals the substantive medical treatment or nature of the appointment. *Id.* at 16. As previously explained in Carbon Health's Motion, Plaintiff has not alleged that *she* ever typed information related to symptoms into the search bar, or that Meta or Google received any such information about *her*. Plaintiff's *examples* of hypothetical searches on Carbon Health's website are wholly insufficient. *See* Compl. at ¶¶ 53–56. Further, even if Plaintiff properly alleged that she made any such searches, those would be non-actionable "general health information" which is "accessible to the public at large." *Smith*, 262 F. Supp. 3d at 954–55; *see also, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, No. EDCV 23-2092-JGB (KKX), 2024 WL 878100 (C.D. Cal. 2024) ("[T]he Court can only interpret that Plaintiffs used Defendant's Website for routine medical searches and inquiries"). As before, Plaintiff's reliance on *In re Meta Pixel Healthcare Litig.* continues to be misplaced for the reasons discussed above. Again, that case turned on the presence of an active Facebook Pixel *inside* patient portals. 647 F. Supp. 3d at 784. Plaintiff has not made such an allegation in the present case. *See also, e.g.*, *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 819 (N.D. Cal. May 8, 2023) (denying motion to dismiss because plaintiff had sufficiently alleged that defendant incorporated the Meta Pixel into the "MyChart portal"). The other case relied upon by Plaintiff is equally distinguishable, as *Colleen M. v. Fertility & Surgical Assocs. Of Thousand Oaks* involved the specific disclosure to the plaintiff's ex-fiancé that the plaintiff was undergoing in vitro fertilization. 132 Cal. App. 4th 1466, 1472 (2005). Disclosing the specifics of an individual's treatment is far different from the allegations in the present case, which involve—at most—the disclosure of the type of appointment an individual may be seeking.

Plaintiff's attempts to distinguish cases upon which Carbon Health relied in its Motion also fail. Opp'n at 15–16. Plaintiff argues that the plaintiff in *Wilson* "did not plead the specific treatment sought and received . . . ." *Id.* at 15 (citing *Wilson, LLC*, 2021 WL 4865930, at *5). The same is true here as Plaintiff has not alleged that she ever typed information related to symptoms into the search bar. Plaintiff's argument also conveniently overlooks the fact that an appointment can be booked on Carbon Health's website without typing any symptom information.

Plaintiff suggests that the *Smith* case does not apply because the information disclosed in *Smith* "involved URLs for pages users viewed on the website 'containing information about treatment options for melanoma, information about a specific doctor . . . .'" Opp'n at 16 (quoting *Smith*, 262 F. Supp. 3d at 954–55). But the information allegedly disclosed to Facebook and Google here is no different. Plaintiff's allegations here sought "information about treatment options" for various symptoms. 262 F. Supp. 3d at 954–55. *Smith* clearly applies.

**B. Plaintiff Fails to Allege the Unauthorized Viewing of the Information.**

Even if the information allegedly disclosed could constitute "medical information" (as Plaintiff wrongly contends), Plaintiff's CMIA still fails because she has not alleged that the information was actually viewed by an unauthorized person. Mot. at 13–15.

Plaintiff's Opposition argues that Meta and Google are entities capable of "viewing" such information, and that Plaintiff's alleged receipt of advertisements supposedly establishes such viewing. Opp'n at 18–19. Plaintiff's argument, which merely reiterates insufficient allegations in the Complaint, is unpersuasive.

First, Plaintiff argues without support that entities such as Meta and Google "view" information collected via the Website Technologies. *Id.* While Plaintiff continues to contend that her description of how the Website Technologies operate proves her point, the Complaint's allegations actually do the opposite. Plaintiff's allegations establish that information transmitted via the Website Technologies are received, processed, and utilized by Meta and Google through a series of programs and sets of code, such that human individuals do not necessarily "view" the information these programs receive and process. *See, e.g.*, *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7 (Cal. Super. Ct. 2023) (holding that "the information may be collected, analyzed, and used by [Meta] . . . all through the use of computers, without any human actually laying eyes on it"). While Plaintiff directs this Court to cases supposedly finding otherwise, none of the cited cases (one of which is only a tentative ruling) analyze the question in any detail, relying instead merely on the pleading standard. *See, e.g.*, *Warren v. Pomona Valley. Hosp. Medical Center*, No. 23STCV05324, 2023 WL 8439334, at *11 (Cal. Super. Nov. 14, 2023) ("Facebook allegedly 'viewed, processed, and analyzed Plaintiffs' and Class Members' confidential Private Information.' . . . The Court must

assume this allegation is true at the pleading stage."); *Bustos v. Riverside*, No CVRI2203466, at 4 (Cal. Super. Jan. 30, 2023) (finding, in a tentative ruling, plaintiff's allegations that Facebook processes, analyzes, and assimilates information sufficient to withstand a demurrer); *Cousin II*, 2023 WL 8007350, at *4 ("[W]hether the alleged use by Meta of the information, through perhaps algorithms, amounts to viewing or accessing . . . is a question the Court cannot answer on Defendant's motion to dismiss."). In contrast, courts that have actually analyzed the question of unauthorized viewing as it pertains to entities such as Facebook and Google, like *Barbour*, have concluded that whether information was actually "viewed" as contemplated by CMIA is an issue that is appropriate for resolution by a motion to dismiss. This Court should follow suit. The allegations of the Complaint themselves confirm that Facebook and Google do not "view" the information received via the Website Technologies as contemplated by the CMIA.

Plaintiff next argues that it is a "reasonable inference that Plaintiff's receipt of COVID-19 vaccination advertisements after scheduling her COVID-19 vaccination appointment shows that third parties viewed her disclosed health information." Opp'n at 19. As explained in Carbon Health's Motion, Plaintiff's conclusion requires making the unsupported (and improbable) inference that online advertisements for COVID-19 vaccination could *only* result from booking a vaccination appointment on Carbon Health's website. While Plaintiff argues that her allegations are sufficient at the motion to dismiss stage, conclusions and assertions are not "facts" entitled to the presumption of truth, and a plaintiff must provide "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Complaint provides no factual support tying Plaintiff's alleged appointment to the advertisements supposedly received, nor does Plaintiff address whether she searched for vaccination appointments more generally, including through a general Internet search (*e.g.*, Google) or through other healthcare provider's websites.

Finally, the case upon which Plaintiff primarily relies to support her contention that her information was "viewed" as contemplated by CMIA is plainly distinguishable. *Regents* involved the presence of the Meta Pixel inside the "MyChart portal," which Plaintiff has not alleged here. *Regents of Univ. of Cal.*, 672 F. Supp. 3d at 819. *Regents* also involved a plaintiff that allegedly input specific medical information relating to heart issues and high blood pressure, which more

plausibly connected Meta to the plaintiff's receipt of advertisements for blood pressure medication. *Id.* at 819. Plaintiff's allegation about a COVID-19 vaccination appointment does not involve a specific medical condition, nor are such allegations specific enough to reasonably connect Carbon Health to Plaintiff's alleged receipt of targeted advertisements. Therefore, Plaintiff has failed to establish unauthorized viewing.

## IV. Plaintiff's Claim for Invasion of Privacy under the California Constitution Fails.

As explained in Carbon Health's Motion, Plaintiff does not articulate a specific, protected privacy interest, a reasonable expectation of privacy, or a serious invasion of that privacy interest. Mot. at 15–17. Plaintiff's Opposition doubles down on the Complaint's deficient allegations, relying entirely on her unsupported and false characterization of the information at issue as PHI.

### A. Plaintiff Has Not Alleged a Specific, Protected Privacy Interest.

As addressed in Carbon Health's Motion, Plaintiff has not and cannot allege a specific, protected privacy interest because the information that was supposedly disclosed to Meta and Google does not constitute PHI. Mot. at 14. Plaintiff's Opposition does nothing more than assert without support that such information is PHI, and therefore protected. For the reasons previously set forth in Carbon Health's Motion, Plaintiff is wrong.

### B. Plaintiff Had No Reasonable Expectation of Privacy in the Web Data at Issue.

Plaintiff's Opposition argues that the information disclosed to Facebook and Google is PHI and thus Plaintiff possessed a reasonable expectation of privacy. Opp'n at 21–22. As explained in Carbon Health's Motion, Plaintiff's argument is unsupported.

First, Plaintiff argues that "'communications made in the context of a patient-medical provider relationship are readily distinguishable from' general online communications," *id.* at 21 (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 800), and further asserts that "individuals maintain a reasonable expectation of privacy in detailed URLs." *Id.* (citation omitted). Neither point is relevant because the communications Plaintiff alleges to have made on the website do not involve PHI. The fact that Plaintiff's activity happened to occur on the website of her alleged healthcare provider does not change this. In addition, there can be no reasonable expectation of

privacy in the generalized URL information at issue in this matter because, as discussed above, a URL merely identifies the location of the requested webpage on the Internet.

Plaintiff next argues she possessed a reasonable expectation of privacy because Carbon Health's Privacy Policy provides it will not use HIPAA-protected information without patient consent. Opp'n at 21. Again, Plaintiff's argument rests on the incorrect assumption that HIPAA-protected PHI was disclosed. Again as discussed above in detail, browsing data from public websites containing general information about a doctor, disease, appointment, or treatment, even when potentially connected to user information via the Website Technologies, is not PHI subject to HIPAA privacy requirements. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 955. Therefore, Plaintiff possessed no reasonable expectation of privacy in the information at issue.

**C. Plaintiff Has Not Alleged a Sufficiently Serious or Highly Offensive Disclosure.**

Information Plaintiff obtained on Carbon Health's public-facing website, including information related to alleged appointments, cannot be considered highly offensive, nor does Plaintiff point to any illegitimate motives connected to the alleged disclosures. Plaintiff's Opposition not only argues that the information at issue is PHI (it is not), but also relies on plainly distinguishable cases to contend that the disclosure would be highly offensive even if PHI was not involved. Opp'n at 22–25.

Plaintiff's argument that the alleged disclosure was highly offensive because PHI is implicated fails for reasons previously discussed. *See, e.g.*, *B.K.*, 2024 WL 878100, at *7 ("Because Plaintiffs fail to plead that any medical information was disclosed, Plaintiffs claims do not rise to the level of an 'egregious breach of the social norms' that is 'highly offensive.'").

Plaintiff's alternative argument, that the alleged disclosure was offensive even if not PHI, is based on inapposite case law concerning distinctly different technologies, and is equally unconvincing. For example, Plaintiff's relies on *Brown v. Google*, but that case involved different technology (Google's alleged data collection practices in "private browsing mode") and different representations (Google's representations about data collection practices within that mode). 525 F. Supp. 3d 1049 (N.D. Cal. March 12, 2021). The same is true of *Calhoun*, which involved Google Chrome's "Sync feature," and representation made with respect thereto. 526 F. Supp. 3d at 631.

Plaintiff's next argument that the disclosure of a COVID-19 vaccination appointment is alone highly offensive has been rejected in California. *See, e.g.*, *Ojeda v. Kaiser Permanente Int'l, Inc.*, No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249, at *7 (C.D. Cal. 2022) (rejecting offensiveness argument about the disclosure of COVID-19 vaccination status because "Plaintiff has failed to allege sufficient facts to establish that the disclosure here was *highly offensive* . . . Without these details, the Complaint does not allege an *egregious* breach of social norms, and thus, insufficiently states a claim for invasion of privacy") (emphasis in original). Plaintiff's contention that Carbon Health's reliance on *Ojeda* is misplaced, as the disclosure in that case "was made by the plaintiff's employer to the plaintiff's colleagues and did not reveal communications with a health care provider," is yet another distinction without a difference. Opp'n at 24. In fact, the alleged disclosure in this case—which was purportedly made to a set of code operated by Facebook and Google—is even less potentially offensive than the disclosure to an individual's colleagues.

Finally, Plaintiff does not even attempt to address the argument that Plaintiff's Complaint fails to allege any illegitimate motives connected to the claimed disclosures. Plaintiff appears to concede that monitoring internet use for "legitimate business reasons," as opposed to "socially repugnant or unprotected reasons" like "harassment, blackmail, or prurient curiosity," is not highly offensive. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 297–98 (2009).

## <u>CONCLUSION</u>

For the foregoing reasons, Carbon Health respectfully asks the Court to dismiss the Complaint in its entirety, without leave to amend.

Dated: June 14, 2024

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: *<u>/s/ Tammy B. Webb</u>*
Tammy B. Webb
Russell L. Taylor

Attorneys for Defendant,
CARBON HEALTH TECHNOLOGIES. INC.